SOUTHERN RAILWAY COMPANY *v.* STATE OF GEORGIA.

No. 12851. July 14, 1939. Rehearing denied July 27, 1939.

*R. M. Arnold* and *Neely, Marshall & Greene,* for plaintiff in error. *Ellis G. Arnall, attorney-general, Marshall L. Allison* and *B. D. Murphy, assistant attorneys-general,* contra.

Eve, Judge. The briefs filed in this case by the defendant in error, and to some extent those filed by the plaintiff in error, present many pages of historical matter covering the creation and the life story of the Atlanta and Florida Railway. Under our view of the legal issues involved, however, we deem it hardly necessary to set forth herein more than a bare statement of a few outstanding facts. It is sufficient to say that on July 9, 1886, the secretary of State of Georgia, under general law of the State, granted a charter or articles of incorporation creating the Atlanta and Hawkinsville Railroad Company. During the same year, by special act, the General Assembly conferred upon the corporation additional powers, privileges, and, we might say, imposed upon it additional duties and responsibilities. In 1887, by act, the General Assembly again enlarged its powers and changed its name to Atlanta and Florida Railway Company. The new line soon fell into financial difficulties, and was mortgaged and then sold, and then mortgaged and sold again, until it finally came to rest under the outstretched arms of the Southern Railway Company, where it has lain, if not rested, since the 27th day of June, 1895. It is admitted that continuously since that time the Southern Railway Company has exercised the franchises and privileges granted to the Atlanta and Hawkinsville Railroad Company, and those which came after it, through direct legislative action or otherwise, operating the entire line from Atlanta to Fort Valley, Georgia. It is also admitted that the Atlanta & Florida Railroad Company and its properties are now being used and operated by the Southern Railway Company as part of its system and in the transportation of both intrastate and interstate passengers and freight.

Within the past few years the Southern Railway management

evidently reached the conclusion that the child of its adoption was becoming, or had become, a financial burden; at least that portion of the line lying between Rosedale, just outside of Atlanta, and Williamson, a railroad junction about midway between Atlanta and Fort Valley, where another line of the Southern Railway crosses the Atlanta and Florida; this other line being one from Atlanta to Columbus through McDonough. At any rate, petition was filed on July 16, 1935, with the U. S. Interstate Commerce Commission, asking for a certificate of public convenience and necessity, to be used as authority for an abandonment or dismantling of the section lying between Rosedale and Williamson, about forty miles. In the manner and form required by U. S. statutes, the Governor of Georgia and the Georgia Public-Service Commission were notified of such application, and of the fact that hearing would take place in Atlanta on October 30, 1935. The requisite newspaper advertisement was published, setting forth the time and place of hearing. The State of Georgia, the Public-Service Commission, and various private citizens and business interests appeared in response to the service of notice, and protested and opposed the granting of the certificate of public convenience and necessity. Evidence was introduced by protestants, and efforts made to convince the commission that present and future public necessity and convenience should not and did not authorize or permit the abandonment. By report dated May 29, 1936, the commission held that a further test of operations should be made for one year. This test was made over the period designated, and on July 23, 1937, after expiration of the test period, the Southern Railway Company filed a supplemental application, again asking for the grant of certificate originally applied for. Another hearing was had in October, 1937, following legal notice to the State and others, and protestants again appeared and filed protests and objection to the grant of certificate, upon all grounds available under such protests. Hearing took place before Division No. 4, on March 24, 1938, and on April 23 the commission made and entered its report and issued to the Southern Railway Company its certificate of public convenience and necessity. After the grant of this certificate, the State of Georgia, its Public-Service Commission, and others filed with the Interstate Commerce Commission a motion to rehear and reconsider its action in granting the certificate; which motion was denied and over-

ruled under order dated June 13, 1938. So far as the record discloses, no further action was taken before the commission or in the United States courts; the protestants evidently having reached the conclusion that a remedy, if one, must be applied by and through the State courts. This is evidenced by the fact that counsel for the defendant in error now strongly insists that the certificate was modified in its effect through a statement appearing in the opinion filed by the commission along with the certificate, but not in the face of it, to the effect that "The commission is without authority to determine whether the abandonment would be a violation of the laws of Georgia." This will be discussed later.

In June, 1938, under authority of the Governor of Georgia, the State's attorney-general filed an equitable petition in the superior court of Fayette County, Georgia. This petition, after setting up in detail the story of the Atlanta & Florida Railway, which we will not set out at this time, declares that the State of Georgia has never consented to the discontinuance of service along any part of the Atlanta & Florida Railroad, and has never consented to the dismantling of any part of the railroad or the abandonment of any part of the line or tracks along the line. The plaintiff in error admits that this is true. It is distinctly charged in the petition that irreparable damage and injury would result to the State and its citizens from the threatened action of the defendant; and that, if consummated, the action would be a breach of the contract embodied in the charter and franchise granted to the defendant. Also, that so long as it continued to exercise the privileges and franchises granted to it, it has no legal right to discontinue or abandon a portion of the line of railroad without the consent of the State, unless it surrendered or offered to surrender the whole franchise granted to it by the State. It may well be noted just here that on several occasions during the course of his argument counsel for the defendant in error intimated, if he did not openly declare, that the Interstate Commerce Commission would have been entirely within its jurisdiction and powers had the application been made and the certificate granted to cover the line in its entirety. He also expressed it as his opinion that if the railroad company could show financial loss through operating the line in its entirety and under its franchise, then it could legally abandon the entire line without consent of the State. Be that as it may, counsel strongly argued

that the Southern Railway could not abandon a "segment" of the A. & F. Railroad, and that the Interstate Commerce Commission was not legally authorized to grant authority for such abandonment. Based upon this petition, various hearings were held, and numerous orders and decrees signed. The final outcome was that the demurrers of the defendant were overruled; the plea of the defendant to the jurisdiction of the court was overruled and denied; and a final decree was granted, based upon verdict, enjoining the defendant company from dismantling the "portion" of the A. & F. Railroad described in the petition. Separate, distinct, and detailed assignments of error are made, attacking these findings of the superior court. It is now for this court to determine the legality of such findings and the judgment of the court. No question of fact has been raised, the brief of the defendant in error containing the admission: "We do not take exception to any of the facts as stated by counsel for the plaintiff in error." The historical narrative is voluminous; the pleadings are broad and informative; the briefs of counsel exhaustive and well drawn; the issues for determination by this court, however, are few, and are to be determined by the application of well-recognized principles of law.

A controlling question presented by the record is, whether or not, under the facts alleged in the petition, the superior court of Fayette County has jurisdiction to grant the relief which complainant seeks, this question having been raised by the demurrer to the petition. The railway removed the case to the Federal court. It was remanded. State of Georgia v. Southern Ry. Co., 25 Fed. Sup. 630. Counsel for the State insists that this was an adjudication, binding on the railway company, that the suit was not one to enjoin or annul an order of the Interstate Commerce Commission, and was not one arising under the constitution or laws of the United States. We can not agree to this contention. The United States district judge held: "In the suit at bar, plaintiff insists that it has a right granted by the State statute, which in fact was a contract between the State and defendant, and that the fact that the Interstate Commerce Commission had authorized the abandonment of the lines in question would not defeat its right under the State statute. Thus it is seen that plaintiff relies wholly upon the State statute as the source of its right, and in no way relies upon

any order of the Interstate Commerce Commission or Federal statute or the Federal constitution, though it anticipates defendant's defense that the Interstate Commerce Commission's order may defeat its right." The case was remanded, because it did not appear on the face of the petition, unaided by the answer, that the complainant's case arose "under the constitution or laws of the United States," within the meaning of the removal statute. The statement in Judge Underwood's opinion, that "If the defendant has any such defense to the plaintiff's claim, it may be set up in the State courts," is not by us construed as holding that in this particular case the State court had jurisdiction. A case may be one which is not removable under the statute and therefore proper to be remanded, and yet one in which the State court itself has no jurisdiction. Suppose that a plaintiff had sued an individual, in Fayette superior court, in ejectment for a lot of land located in Clayton County, and that for reasons which were insufficient the defendant removed the case to the United States court. No one would argue that by a mere remand of the case by the Federal court the superior court of Fayette County had jurisdiction of the suit, in the face of our constitutional provision that cases respecting title to land shall be tried in the county where the land lies. The statement in Judge Underwood's opinion was an excerpt from the opinion of the Supreme Court of the United States, In re Winn, 213 U. S. 458 (29 Sup. Ct. 515, 53 L. ed. 873), decided in 1909. The transportation act was not enacted until 1920, and of course nothing ruled In re Winn, supra, has application to a case such as the one now before us.

In section 1, paragraph 18, of the transportation act (U. S. C. A. title 49) it is stated that "No carrier by railroad subject to this chapter shall abandon all or any portion of the line of railroad, or the operation thereof, unless and until there shall first have been obtained from the commission a certificate that the present or future public convenience and necessity permit of such abandonment." In paragraph 19 we find the following: "Upon receipt of any application for such certificate, the commission shall cause notice thereof to be given to and a copy filed with the Governor of each State in which such additional or extended line of railroad is proposed to be constructed or operated, or all or any portion of a line of railroad, or the operation thereof, is proposed

to be abandoned, with right to be heard." Paragraph 20 is in part as follows: "The commission shall have power to issue such certificate as prayed for, or to refuse to issue it, or to issue it for a portion or portions of a line of railroad, or extension thereof, described in the application, or for the partial exercise only of such right or privilege, and may attach to the issuance of the certificate such terms and conditions as in its judgment the public convenience and necessity may require. From and after issuance of such certificate, and not before, the carrier by railroad *may,* without securing approval other than such certificate, comply with the terms and conditions contained in or attached to the issuance of such certificate, and proceed with the construction, operation, or abandonment covered thereby." No point was raised in the instant case as to the constitutionality of this act. In Colorado *v.* U. S., 271 U. S. 153, 162 (46 Sup. Ct. 452, 70 L. ed. 878) it was observed: "The certificate issues not primarily to protect the railroad, but to protect interstate commerce from undue burden or discrimination. The commission by its order removes an obstruction which would otherwise prevent the railroad from performing its Federal duty." In the same opinion it was said: "Congress has power to assume not only some control, but paramount control, in so far as interstate commerce is involved. It may determine to what extent and in what manner intrastate service must be subordinated in order that interstate service may be adequately rendered. The power to make the determination inheres in the United States as an incident of its power over interstate commerce. The making of this determination involves an exercise of judgment upon the facts of the particular case. The authority to find the facts, and to exercise thereon the judgment whether abandonment is consistent with public convenience and necessity, Congress conferred upon the commission."

Attention was called to the fact that in the opinion filed by the commission along with its certificate of convenience and necessity this statement appears: "Whether the abandonment would be in violation of the law of Georgia is not a question within our jurisdiction." It seems to us that remarks or statements made while compiling an opinion to go with its certificate, as required by statute, are by no means sufficient to define and fix the jurisdiction of the Interstate Commerce Commission, nor should they be

construed to place a qualification or limitation upon an unambiguous certificate granted by it. It is an administrative body created by the laws of the United States, and its jurisdiction and the limitations thereof are fixed by statute. Apparently no authority is delegated to it to enforce contracts by and between a sovereign State and its franchise holders and operators. An uncalled for or irrelevant statement appearing, not in the order, but in an opinion concerning altogether disconnected matters, should certainly not be held to fix or limit the power of the commission or to modify the terms or alter the effect of its findings. A statement in an opinion, that the commission was not authorized to handle foreign diplomatic affairs, or to assume jurisdiction in the enforcement of the criminal laws of the several States, would have been equally true and equally irrelevant.

We agree to this statement of counsel for the railway company: "Although the State has not in form prayed that the certificate of convenience and necessity issued by the Interstate Commerce Commission on April 23, 1938, to become effective sixty days thereafter, be enjoined, it has sought to prevent Southern Railway Company from doing the very thing the commission has found and issued a certificate that the public convenience and necessity permit, which, by virtue of subparagraph (20) of section 1 of the interstate-commerce act is all that is necessary to enable Southern Railway Company to abandon the trackage. By its prayers the State has sought exactly the same result it would have sought had it in terms prayed that the commission's order be enjoined. Therefore to say that the State has not, in effect, prayed that the certificate be enjoined would be to emphasize form and ignore substance and reality." The suit is in purpose and effect an effort to enjoin an order of the Interstate Commerce Commission; and Congress has enacted that "Suits to enjoin, set aside, annul, or suspend any order of the Interstate Commerce Commission shall be brought in the district court against the United States." 28 U. S. C. A. title, 28, § 46 (Judicial Code, § 208). Congress has likewise declared that "No interlocutory · injunction suspending or restraining the enforcement, operation, or execution of, or setting aside, in whole or in part, any order made or entered by the Interstate Commerce Commission shall be issued or granted by any district court of the United States, or by any judge thereof, un-

less the application for the same shall be heard and determined by three judges, of whom at least one shall be a circuit judge, and unless a majority of said three judges shall concur in granting such application." 28 U. S. C. A. § 47. In Illinois Central R. Co. v. Public Utility Com., 245 U. S. 493 (38 Sup. Ct. 170, 62 L. ed. 425), certain railroads had sued in the district court for the northern district of Illinois, to restrain State officials from interfering with the carrying out by the plaintiff carriers of an order of the Interstate Commerce Commission authorizing them to raise certain intrastate rates to the level of interstate rates. The State officials by cross-bills sought to have the order of the Interstate Commerce Commission declared invalid. The court held that the cross-bills were in effect bills to restrain, set aside, annul, or suspend the order of the Interstate Commerce Commission, and hence that the district court was without jurisdiction of the cross-bills, since the United States of America was not a party, and since, even if it had been made a party, it had not consented to be sued in that district. The Supreme Court of the United States said: "Passing the fact that they were presented as cross-bills, it is apparent that, in subject-matter and purpose, they were suits to set aside the order. By statute such suits are required to be brought against the United States (Judicial Code, secs. 208, 211, chap. 32, 38 Stat. at L. 219, 220), and the jurisdictional provision before mentioned permits them to be brought only in designated districts."

The case of Lambert Run Coal Co. v. Baltimore & Ohio R. Co., 258 U. S. 377 (42 Sup. Ct. 349, 66 L. ed. 671), is in point. There suit was brought against a railroad in a State court, to enjoin it from distributing coal-cars in accordance with certain rules of the railroad, and apparently the plaintiff sought to conceal the fact that the suit was to enjoin the railroad from doing that which it had been authorized to do by the commission. Though the complainant in its pleadings did not disclose the fact that the suit was in reality one to enjoin an order of the commission, the Supreme Court of the United States held that such was its character, and that it should have been dismissed. As pointed out by counsel, the fact that the order of the Interstate Commerce Commission involved in the Lambert Run case was mandatory, and the order in the instant case is permissive, is of no consequence. In Venner v. Michigan R. Co., 271 U. S. 127 (46 Sup. Ct. 444, 70 L. ed. 868), the Supreme

Court of the United States said: "We agree with the court below that the suit is especially one to annul or set aside the order of the commission. While the amended bill does not expressly pray that the order be annuled or set aside, it does assail the validity of the order and pray that the defendant company be enjoined from doing what the order specifically authorizes, which is equivalent to asking that the order be adjudged invalid and set aside [citing the Lambert Run case, supra]. Such a suit must be brought against the United States as the representative of the public, and may be brought only in a Federal district court. Judicial Code, §§ 208, 211; Act of October 22, 1913, chap. 32, 38 Stat. at L. 219; Illinois C. R. Co. v. State Pub. Utilities Commission, 245 U. S. 492, 504, 62 L. ed. 425, 436, P. U. R. 1918C, 279, 38 Sup. Ct. Rep. 170; Texas v. Interstate Commerce Commission, 258 U. S. 158, 164, 66 L. ed. 531, 537, 42 Sup. Ct. Rep. 261; Lambert Run Coal Co. v. Baltimore & O. R. Co., supra. That the order is not mandatory, but permissive, makes no difference in this regard. Chicago Junction case (Baltimore & O. R. Co. v. United States, 264 U. S. 258, 66 L. ed. 667, 673, 44 Sup. Ct. Rep. 317). And as the State court was without jurisdiction, the Federal court acquired none by the removal. Lambert Run Coal Co. v. Baltimore & O. R. Co., supra."

The defendant in error relies strongly upon Texas v. Eastern Texas Railroad Co., 258 U. S. 204 (42 Sup. Ct. 281, 66 L. ed. 566), to support its contention that the Interstate Commerce Commission was without authority to pass an order allowing abandonment of the segment of this intrastate road. The commission, however, did by the express terms of its order allow abandonment, and the question here is not as to the validity of the order, but as to jurisdiction of the State court to declare the order invalid, in view of the transportation act. In the case just cited two actions by the State were considered, but only one of the actions was instituted after passage of the order by the Interstate Commerce Commission; and that suit was brought, not in the State court, but in the Federal district court, and against the United States as defendant, in accordance with the transportation act. So the decision ruled nothing pertaining to the present inquiry as to *jurisdiction* of the State court. Cf. Colorado v. United States, 271 U. S. 153 (46 Sup. Ct. 452, 70 L. ed. 858). We reach the conclusion

that the trial court had no jurisdiction of the complaint, and that the petition should be dismissed. In this view the other interesting questions raised and argued will not be decided; our judgment of reversal resting solely on the ground of want of jurisdiction. The court erred in overruling the demurrer, and the further proceedings were nugatory.

*Judgment reversed. Atkinson, P. J., and Bell, Grice, Eve, and Pomeroy, JJ., concur. Jenkins, J., dissents.*

JENKINS, Justice, dissenting. It is agreed that an order of the Federal court, remanding a case to the State court, can not have the effect of conferring jurisdiction upon the State court with respect to a matter over which it otherwise has no control. Consequently there can be no question that the process of injunction could not be employed in the State court against the railway company, in order to attack a permit granted to it by the Interstate Commerce Commission to discontinue a portion of its line engaged in interstate commerce. This is true for the reason that under the Federal law any such attack on such an order must be brought in the district court of the United States against the United States as party defendant. Still, since there has been no determination by the Interstate Commerce Commission as to the validity of the State's contention under its alleged contract, it would not seem that an effort to establish such right in the State court could be taken as an effort to annul any action taken by the commission. Irrespective of whether or not the Interstate Commerce Commission was in fact clothed with the authority, which it disclaimed, to determine the alleged contractual right of the State of Georgia, it has nevertheless plainly and specifically declined to do so, and by its opinion has limited its order accordingly. The result is that its permit thus became conditional in character, and has thus been confined solely to questions of public convenience and necessity. All this being true, can it then be properly said that the State, in now seeking to assert its alleged contractual rights, is undertaking to annul or enjoin the order of the Interstate Commerce Commission, which plainly and specifically refrained from passing upon the very question which the State is now seeking to have adjudicated? Were it to be assumed that the commission was in error in holding itself to be without authority to adjudicate such a contractual matter, even then it is one thing to possess

authority, and quite another thing to exercise it. Whatever authority the commission might or might not have had to determine the contractual rights of the State of Georgia, one thing is certain, and that is it has expressly failed to exercise any. If it should be assumed that the commission had authority to deal not only with matters pertaining to public convenience and necessity, but with the State's contractual rights, must it also be assumed that it did so, despite its solemn declaration to the contrary; and must this court then proceed to speculate as to what conclusion it would have reached had it in fact done so, and that its conclusion would have been adverse to the State's contention? The commission having excluded matters of contractual right, and having thus in effect confined the purport and extent of its order to questions concerning public convenience and necessity, it would seem that any effort by the State to assert its contractual rights can not properly be construed as either a direct or indirect attack upon the conditional and restricted order of the commission. In the case dealt with by the Supreme Court of the United States (Illinois Central R. Co. *v.* State Public Utilities Commission, 245 U. S. 492, supra), which has been cited in the majority opinion, the order of the Interstate Commerce Commission was not so restricted as to render it conditional in effect. Not only this, but it has been judicially determined by the district court of the United States in this case, in an unappealable and conclusive judgment, passed in connection with the removal proceeding, that the present action is *not* an attempt to enjoin or annul the order of the Interstate Commerce Commission. Under the order of that commission, qualified and limited as has been indicated, this ruling by the district court would seem to be in accordance with law; but even were it to be assumed otherwise, the parties to this litigation were properly before that court, and it had authority to pass upon all questions relating to the subject-matter of removal, with the result that its decision, which remains unappealed from, is binding.

Accordingly, without making any attempt to reach a conclusion on the merits of the State's case, which has not been dealt with in the majority opinion, it would seem, since the State's contention is based solely upon a matter of contractual right, which has never been adjudicated, but which, on the contrary, was expressly excluded from the scope of the order of the Interstate Commerce

Commission, and since there has been a conclusive judgment by a court of competent jurisdiction that the present suit is not an attack upon the order of the commission,—since all this appears on the face of the record, it would seem that the present action was properly allowed to proceed in order to determine that which no other court or tribunal had previously dealt with, to wit, the validity of the State's rights under its alleged contract. If the order passed by the Interstate Commerce Commission, restricted as it was, nevertheless, under the laws of the United States, constituted a good defense to the action in the State court, it was within the province of the State court so to declare. Likewise, if the order of the commission did not constitute a good defense, the State court was not deprived of its jurisdiction so to adjudge. As was said by the Supreme Court of the United States, In re Winn, 213 U. S. 458, 465 (29 Sup. Ct. 515, 53 L. ed. 873) : "It is not enough, as the law now exists, that it appears that the defendant may find in the constitution or laws of the United States some ground of defense. Louisville & Nashville Railroad *v.* Mottley, 211 U. S. 149 [29 Sup. Ct. 42, 53 L. ed. 126], and cases cited. If the defendant has any such defense to the plaintiff's claim, it may be set up in the State courts, and, if properly set up and denied by the highest court of the State, may ultimately be brought to this court for decision."