**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 16, 2015**

# In the Court of Appeals of Georgia

A15A0032. FIELDER et al. v. JOHNSON.

PHIPPS, Presiding Judge.

In May 2013, Samuel and Julie Fielder filed a petition under OCGA § 19-7-3 (commonly known as the Grandparent Visitation Statute),[1] seeking visitation with the minor child of their deceased daughter. The Fielders (hereinafter, the Grandparents) named as defendant the child's father, Kelly Johnson (hereinafter, the Father). He filed a motion to dismiss the Grandparents' action, arguing that they lacked standing. The trial court granted the motion, and the Grandparents appeal. For reasons that follow, we reverse.

---

[1] See, e.g., *Sheppard v. McCraney*, 317 Ga. App. 91, 92 (730 SE2d 721) (2012).

In support of his motion to dismiss, the Father presented his affidavit detailing this chronology of events that preceded the Grandparents' action: (i) he and the child's mother were once married; (ii) upon their divorce, he was awarded sole physical custody of the child; (iii) he married another woman; (iv) the child's mother died; then (v) his wife adopted the child in 2012. Additionally, the Father averred,

> At all times since [my wife] and I married, [the child] has lived with both of us and continues to do so today. At no time have [my wife] and I been separated. We are not presently separated. Presently, [the child], [my wife], and I live together . . . . Neither of us are incapacitated and neither of us has been or presently is incarcerated.

Citing those circumstances, the father argued that subsection (b) of the Grandparent Visitation Statute, together with *Kunz v. Bailey*,[2] made it clear that the Grandparents' petition for visitation could not be sustained, given that it was filed as an *original* action.

In *Kunz*, biological grandparents filed an action seeking visitation with the child born to their son.[3] Prior to the action being filed, their son had terminated (surrendered) his parental rights to the child, and the child's mother had then married

---

[2] 290 Ga. 361 (720 SE2d 634) (2012).

[3] Id.

another man, who thereupon had adopted the child.[4] Citing that the child lived with them, the child's mother and her husband moved to dismiss the grandparents' action as unsustainable given the plain language of OCGA § 19-7-3 (b).[5]

The Supreme Court of Georgia concluded in *Kunz* that the parents' position was correct, setting forth the text of OCGA § 19-7-3 (b):

> Except as otherwise provided in this subsection, any grandparent shall have the right to file an original action for visitation rights to a minor child or to intervene in and seek to obtain visitation rights in any action in which any court in this state shall have before it any question concerning the custody of a minor child, a divorce of the parents or a parent of such minor child, a termination of the parental rights of either parent of such minor child, or visitation rights concerning such minor child or whenever there has been an adoption in which the adopted child has been adopted by the child's blood relative or by a stepparent, notwithstanding the provisions of Code Section 19-8-19. This subsection shall not authorize an original action where the parents of the minor child are not separated and the child is living with both of the parents.[6]

The *Kunz* Court explained,

---

[4] Id.

[5] See id.

[6] Id., quoting OCGA § 19-7-3 (b) (2011).

A plain reading of OCGA §19-7-3 (b) offers two avenues by which grandparents may seek court-sanctioned visitation rights to their grandchildren. They can (1) file an original action or they can (2) intervene in an existing court action. Grandparents may intervene in any action where custody of the grandchild is an issue; in the divorce of the parents or a parent; in the termination of rights case of either parent; in the termination of visitation rights of either parent; and in the adoption of the grandchild by a blood relative or by a stepparent. Also, by virtue of the limiting language in the last sentence of OCGA §19-7-3 (b), grandparents may only file an original action for visitation when the parents are separated and the child is not living with both parents. In keeping with our decision in *Brooks v. Parkerson*,[7] the statute does not otherwise allow grandparents, by court action, to intrude upon the "constitutionally protected interest of parents to raise their children."[8]

In reaching its conclusion that the grandparents' action (which had been filed as an original action) should have been dismissed, the *Kunz* Court expressly rejected the

---

[7] 265 Ga. 189 (454 SE2d 769) (1995). *Brooks* adhered to well-established law: "The U. S. Supreme Court has long recognized a constitutionally protected interest of parents to raise their children without undue state interference. . . . Parents have comparable interests under our state constitutional protections of liberty and privacy rights. The right to the custody and control of one's child is a fiercely guarded right in our society and in our law. It is a right that should be infringed upon only under the most compelling circumstances." Id. at 191, 192 (2) (a) (citations and punctuation omitted).

[8] *Kunz*, supra at 362 (emphasis deleted; emphasis supplied), quoting *Brooks*, supra at 191 (2) (a).

4

grandparents' argument that the term "parents," as used in the statute, included only biological parents (and, thus, not adoptive parents) of the child.[9] Indeed, the Court recited the principle that "language cannot be added to a statute by judicial decree."[10] Thus, the *Kunz* Court concluded, "Since [the mother's husband] was the child's parent at the time [the grandparents] filed their original action for visitation . . . and the child was living with [the mother and her husband] who were not separated, [the grandparents] had no basis to file an original action for visitation under the statute."[11]

In the instant case, there is no dispute that the Grandparents filed an original action; that is, the Grandparents did not intervene in either the divorce or the adoption proceedings. In dismissing the Grandparents' original action, the trial court reasoned,

> [The Grandparents] cannot simply ignore the fact that the Child was adopted by Stepmother . . . . The Child is living with two parents, her biological father and her adoptive mother; therefore, the [Grandparents] do not have standing to file a petition seeking court-ordered visitation and access.

---

[9] *Kunz*, supra.

[10] Id. at 362-363, citing *In the Interest of T. C. D*., 281 Ga. App. 517, 518 (636 SE2d 704) (2006).

[11] *Kunz*, supra at 363.

5

On appeal, the Grandparents contend that the trial court erred in dismissing their action. They point out that a few months after the *Kunz* decision, the General Assembly amended the Grandparent Visitation Statute.[12] Given such amendment, the Grandparents maintain that they remain within "a group of protected people who the legislature has intended to provide very specific rights." Indeed, the statutory scheme supports the Grandparents' assertion.

"The cardinal rule of statutory construction is to seek the intent of the legislature, and language in one part of a statute must be construed in the light of the legislative intent as found in the statute as a whole."[13] A court is required to "follow the literal language of the statute unless it produces contradiction, absurdity or such an inconvenience as to [e]nsure that the legislature meant something else. . . . The court also considers the law as it existed before the statute was passed and identifies

---

[12] Ga. L. 2012, p. 860 (amending statute, effective May 1, 2012). The current version of the Grandparent Visitation Statute, which version was analyzed by the trial court in this case, contains a subsection (b) that is substantively identical to the subsection (b) analyzed in *Kunz*. See generally *Esasky v. Ford*, 321 Ga. App. 891, 892, n. 1 (743 SE2d 550) (2013) (reiterating that because "amendments to the grandparent visitation statute apply retroactively," an appellate court will "analyze the case [before it] under the current version of the law").

[13] *In the Interest of N. M.*, 316 Ga. App. 649, 653 (1) (730 SE2d 127) (2012) (citation and punctuation omitted).

the mischief sought to be corrected."[14] Further, "[t]he General Assembly is presumed to enact all statutes with full knowledge of the existing condition of the law and with reference to it. The meaning and effect of a statute are to be determined in connection, not only with the common law and the Constitution, but also with reference to other statutes and decisions of the courts."[15]

"At common law grandparents had no legal right of visitation with their grandchildren over the objections of the parents."[16] "The [Grandparent Visitation] [S]tatute was enacted to provide a mechanism for courts to grant a grandparent visitation rights with his or her minor grandchild, where . . . a child's parent objects."[17] When the Grandparent Visitation Statute was analyzed in *Kunz*, the Court concluded that dismissal of the grandparents' action there was the proper outcome,[18]

---

[14] *Ga. Power Co. v. Monroe County*, 284 Ga. App. 707, 709 (644 SE2d 882) (2007) (punctuation omitted).

[15] *Summerlin v. Ga. Pines Community Svc. Board*, 286 Ga. 593, 594 (2) (690 SE2d 401) (2010) (citation and punctuation omitted).

[16] *Brooks*, supra at 190, n. 2 (citation omitted).

[17] *Sheppard*, supra (citation and punctuation omitted).

[18] *Kunz*, supra at 363.

because the grandparents had not complied with subsection (b),[19] and as the Court determined, "the statute [did] not otherwise allow grandparents, by court action, to intrude upon the constitutionally protected interest of parents to raise their children."[20] When the General Assembly amended the Grandparent Visitation Statute within months of the *Kunz* decision, among other things it added was subsection (d), which provision the Grandparents in this case specifically relied upon in responding to the Father's argument that they lacked standing because they had not complied with subsection (b). In its entirety, OCGA § 19-7-3 (d) provides,

> *Notwithstanding the provisions of subsections (b) and (c) of this Code section,* if one of the parents of a minor child dies, is incapacitated, or is incarcerated, the court may award the parent of the deceased, incapacitated, or incarcerated parent of such minor child reasonable visitation to such child during his or her minority if the court in its discretion finds that such visitation would be in the best interests of the child. The custodial parent's judgment as to the best interests of the child regarding visitation shall be given deference by the court but shall not be conclusive.[21]

---

[19] Id.

[20] Id. at 362 (citation and punctuation omitted).

[21] (Emphasis supplied.)

Quite explicitly, the language italicized above eliminates the provisions of subsections (b) and (c) from impeding an award of reasonable visitation to individuals particularly designated by subsection (d). Moreover, applying the literal language – "[n]otwithstanding the provisions of subsections (b) and (c)" – produces no contradiction, absurdity or such an inconvenience as to ensure that the legislature meant something else. And as the Grandparents are "the parent[s] of the deceased . . . parent[22] of such minor child," they fall within the ambit of subsection (d).

In determining that subsection (d) was nevertheless inapplicable, the trial court reasoned, "OCGA § 19-7-3 (d) applies where one parent is dead . . . , resulting in a single parent situation and then, and only then, allows grandparents to petition for visitation with the child." We discern no such legislative intent. Nothing in the plain language of subsection (d) explicitly limits its application to that circumstance. And although the final sentence of subsection (d) references "[t]he custodial parent," a longstanding rule of statutory construction is that "[t]he singular or plural number

_____

[22] See generally *Kunz*, supra at 362-363 (rejecting appellant's invitation to limit the term "parents" – whether they be natural, adoptive, or some combination thereof – as used in the Grandparent Visitation Statute, because "[i]f the General Assembly had intended such a limitation, it would have included specific language to that effect *in the statute*") (emphasis supplied).

9

each indicates the other, unless the other is expressly excluded."[23] The legislature has made no express exclusion.

Given the foregoing, the dismissal of the Grandparents' action on the ground that the Grandparents lacked standing for failing to comply with OCGA § 19-7-3 (b) was error.

*Judgment reversed. Doyle, C. J., and Boggs, J., concur*.

---

[23] OCGA § 1-3-1 (d) (6). See generally *Sanborn v. Farley*, 192 Ga. App. 376, 377 (385 SE2d 6) (1989) (describing the rule of statutory construction contained in OCGA § 1-3-1 (d) (6) as "the singular ordinarily includes the plural") (citation omitted); *Herndon v. Jones County*, 18 Ga. App. 523-524 (89 SE 1047) (1916) (noting that prescribed for the construction of statutory enactments is the rule that "the singular or plural number shall each include the other, unless expressly excluded").