**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. Please refer to the Supreme Court of Georgia Judicial Emergency Order of March 14, 2020 for further information at (https://www.gaappeals.us/rules).**

**May 28, 2020**

# In the Court of Appeals of Georgia

A20A0103. HOJEIJ BRANDED FOODS, LLC v. CLAYTON
        COUNTY, GEORGIA et al.

COLVIN, Judge.

Hojeij Branded Foods, LLC ("Plaintiff") filed suit against Clayton County, City of College Park and other entities[1] (collectively, "Defendants") seeking a refund of ad valorem property taxes paid on its usufruct interests at the Hartsfield-Jackson Atlanta International Airport. The trial court granted the Defendants' motion to dismiss on the grounds that Plaintiff's refund claims for the taxes paid in 2013 and

---

[1] Plaintiff sued the following entities: Clayton County, Georgia; Terry L. Baskin, Clayton Tax Commissioner; Clayton Board of Tax Assessors; Clayton County Board of Commissioners; Jeffrey E. Turner, Sonna Singleton Gregory, Gail Hambrick, Felicia Franklin Warner, and Demont Davis, in their official capacities as Clayton County Commissioners; City of College Park, Georgia; College Park Mayor and City Council; Mayor Jack P. Longino; and Councilmen Ambrose Clay, Derrick Taylor, Tracey Wyatt, Roderick Gay, in their official capacities as College Park councilmen.

2014 are barred by sovereign immunity because the complaint was filed more than three years after it paid the taxes. On appeal, Plaintiff argues that the trial court erred by applying the wrong version of the tax refund statute, OCGA § 48-5-380, and by holding that sovereign immunity barred its lawsuit. We agree, and for the following reasons, we reverse.

"A trial court's ruling on a motion to dismiss for failure to state a claim is subject to de novo review, and we accept the allegations of fact that appear in the complaint and view those allegations in the light most favorable to the plaintiff." (Footnote and punctuation omitted.) *B. C. Grand, LLC v. FIG, LLC*, 352 Ga. App. 646, 646-647 (835 SE2d 676) (2019).

So viewed, the evidence shows that Plaintiff leased retail space at the Hartsfield-International Atlanta Airport in order to operate a fast food concession stand pursuant to contracts with the City of Atlanta, which owns the airport. As pertinent to this decision, Plaintiff filed ad valorem taxes on its property interest at the airport in 2013 and 2015. In *Clayton County Bd. of Tax Assessors v. Aldeasa Atlanta Joint Venture*, 304 Ga. 15, 16-17 (1) (815 SE2d 870) (2018), and *City of College Park v. Paradies-Atlanta, LLC*, 346 Ga. App. 63, 65-66 (2) (815 SE2d 246) (2018), the Supreme Court of Georgia and this Court, respectively, held that such

airport retail spaces were not estates in real property, but instead were usufructs that were not subject to ad valorem real estate taxes. On March 13, 2019, Plaintiff filed a suit pursuant to OCGA § 48-5-380 for a refund of the ad valorem taxes that it paid in 2013 and 2014.

Defendants filed motions to dismiss Plaintiff's complaint, arguing that the applicable statute of limitations under OCGA § 48-5-380 is three years from the date of payment and that sovereign immunity was only waived for that three-year period. Plaintiff opposed the motions, arguing that OCGA § 48-5-380 is an express waiver of sovereign immunity and allows a taxpayer to proceed directly to court in a suit for a property tax refund within five years of payment of the tax. The trial court granted the Defendants' motions to dismiss, finding that sovereign immunity barred the action for a tax refund because it was filed more than three years after Plaintiff made its payments for the 2013 and 2014 tax years.

On appeal, Plaintiff argues that the trial court erred in relying upon a former version of OCGA § 48-5-380 and case law interpreting that former version of the tax refund statute when determining the duration of the waiver of sovereign immunity. We agree.

"As governmental bodies, the counties [and cities] of this State are entitled to sovereign immunity and, thus, are not subject to suit for any cause of action unless provided for by statute." (Citation omitted.) *Coleman v. Glynn County*, 344 Ga. App. 545, 549 (2) (809 SE2d 383) (2018). OCGA § 48-5-380 is the statute under which taxpayers may seek refunds from taxes paid to counties and municipalities. "The statutory authorization to bring an action for a tax refund in superior court against a county [or city] is an express waiver of sovereign immunity, and the county [and city's] consent to be sued for a tax refund must be strictly construed." (Citation and punctuation omitted.) *Coleman*, 344 Ga. App. at 549 (2). Accord *City of Dublin School District v. MMT Holdings, LLC*, 346 Ga. App. 546, 546-547 (1) (816 SE2d 494) (2018).

"[T]he interpretation of a statute is a question of law, which is reviewed de novo on appeal." (Citations and punctuation omitted.) *Coleman,* 344 Ga. App. at 548 (1). When only a question of law is at issue, as here, this Court applies the 'plain legal error' standard of review. Id. When this Court interprets a statute,

> we necessarily begin our analysis with familiar and binding canons of construction. In considering the meaning of a statute, our charge as an appellate court is to presume that the General Assembly meant what it said and said what it meant. Toward that end, we must afford the

4

statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere surplusage. And when the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly.

(Citation omitted.) Id.

Here, Plaintiff, who bears the burden of the waiver, see *City of Dublin School District*, 346 Ga. App. at 547 (1), n. 4, asserts that the legislature waived the Defendants' sovereign immunity by enacting the new version of the Tax Refund Statute, OCGA § 48-5-380 (2014).[2] OCGA § 48-5-380 (a) (1) (2014) provides that "every county and municipality shall refund" taxes which have been "determined to have been erroneously or illegally assessed and collected[.]" OCGA § 48-5-380 (2014) then provides that

---

[2] The parties do not dispute that OCGA § 48-5-380 (2014) is the version of the Tax Refund Statute applicable in this case. See Laws 2014, Act 612, §5, effective July 1, 2014. Further, the case was filed on March 13, 2019. The current version of OCGA § 48-5-380 became effective on July 1, 2014. Amendments to statute of limitation govern actions filed after their effective date. See *Smith v. Atlanta Country Club, Inc.*, 217 Ga. App. 515, 516 (458 SE2d 136) (1995) ("This is not a 'retroactive' application of the statute of limitation because the suit was filed after the effective date of the statutory amendment") (citation omitted).

5

(b) Any taxpayer from whom a tax or license fee was collected who alleges that such tax or license fee was collected illegally or erroneously *may* file a claim for refund with the governing authority of the county or municipality within . . . in the case of taxes, *three years after the date of the payment* of the tax or license fee to the county or municipality. . . Submitting a request for refund to the governing authority is not a prerequisite to bringing suit.

(c) The filing of a request for a refund with the governing authority under subsection (b) of this Code section shall act to stay the time period for initiating suit for a refund. Following the filing of a request for refund with the governing authority, no suit may be commenced until the earlier of the governing authority's denial of the request for refund or the expiration of 90 days from the date of filing the claim. *Alternatively, any taxpayer may forgo requesting a refund from the governing authority under subsection (b) of this Code section and elect to proceed directly to filing suit.*

. . .

(g) *Under no circumstances may a suit for refund be commenced more than five years from the date of the payment of taxes or fees at issue.*

(Emphasis supplied.) Id.

In this case, Plaintiff elected to forego the process for requesting a refund outlined in OCGA § 48-5-380 (b) (2014), and instead chose directly to file suit

6

against Defendants for a refund of the 2013 and 2014 ad valorem taxes. Plaintiff's suit, filed on March 13, 2019, was filed more than three years and less than five years after it made the payments for the 2013 and 2014 taxes.[3] Plaintiff argues that OCGA § 48-5-380 (g) dictates the time period in which it may file suit against Defendants, and thus extends the State's waiver of sovereign immunity for tax refund actions to five years.

OCGA § 48-5-380 was substantially amended in 2014.[4] The prior version, OCGA § 48-5-380 (2011),[5] required taxpayers to file a claim of refund directly with the governing authority of the county or municipality within three years of the tax payment. OCGA § 48-5-380 (b) (2011). The taxpayer was allowed to file an action in superior court *only* after the expiration of one year from the date of filing the

---

[3] Plaintiff paid ad valorem taxes to Clayton County for the 2013 tax year in installments on April 23, 2014, and May 15, 2014, and for the 2014 tax year on December 17, 2014. Plaintiff paid its ad valorem taxes to the City of College Park for the 2013 tax year in installments on March 21, 2014, July 30, 2014, and August 5, 2014 and for the 2014 tax year in installments on November 6, 2014, and April 17, 2015.

[4] See Laws 2014, Act 612, §5, effective July 1, 2014.

[5] See Laws 2010, Act 670, §7-1, effective January 1, 2011.

refund claim with the governing authority or within one year from the date the governing authority denied the claim for refund. OCGA § 48-5-380 (c) (2011).

In 2014, the Georgia Legislature amended OCGA § 48-5-380 to remove the filing of a claim directly with the governing authority as a prerequisite to filing suit in court. Rather, OCGA § 48-5-380 (b) (2014) authorizes a taxpayer to choose from two alternative procedures to seek a tax refund: it allows a taxpayer to either file a claim with the municipality *or* to proceed directly to filing suit. OCGA § 48-5-380 (2014) was also amended to add subsection (g), which provides that "Under no circumstances may a suit for refund be commenced more than five years from the date of the payment of taxes or fees at issue."

The parties have not cited to case law interpreting subsection (g) of OCGA § 48-5-380 (2014). As noted above, however,

> [t]he cardinal rule of statutory construction is to seek the intent of the legislature, and language is one part of a statute must be construed in the light of the legislative intent as found in the statute as a whole. A court is required to follow the literal language of the statute unless it produces contradiction, absurdity or such an inconvenience as to ensure that the legislature meant something else. The court also considers the law as it existed before the statute was passed and identifies the mischief sought to be corrected.

8

(Citation and footnote omitted.) *Fielder v. Johnson*, 333 Ga. App. 658, 661 (773 SE2d 831) (2015). Accord OCGA § 1-3-1. The plain and ordinary meaning of the language in OCGA § 48-5-380 (b) (2014) is that a taxpayer has three years in which to file a claim when it elects to file directly against the governing authority. However, OCGA § 48-5-380 (c) (2014) provides that a taxpayer may bypass filing a claim directly against the governing authority, and instead elect to file suit in the trial court to obtain a tax refund. Subsection (c), however, does not provide a deadline for filing such suit. Contrary to the Defendants' argument, it is clear that the three year deadline imposed in subsection (b) does not apply to the taxpayer electing to file suit in the trial court.

The plain language of OCGA § 48-5-380 (b) (2014) provides that the three year deadline applies *only* to the filing of a claim of refund with the governing authority. See OCGA § 48-5-380 (b) (2014) (A taxpayer "may file a claim for a refund with the governing authority of the county or municipality at any time, . . . in the case of taxes, three years after the date of the payment of the tax or license fee to the county or municipality"). However, the only deadline applicable to a taxpayer that elects to directly file suit in the trial court is subsection (g), which provides that "Under no circumstance may a suit for refund be commenced more than five years from the date

9

of the payment of taxes or fees at issue." If the legislature wished to impose a three-year deadline on a taxpayer that elects to file suit directly in the trial court, it knew how to do so. This interpretation of subsection (g) comports with the overall scope of OCGA § 48-5-380, which requires that all lawsuits filed in the trial court seeking a tax refund – whether the taxpayer elected to file a claim with the governing authority first or not – shall be filed within five years of the payment of the alleged erroneously or illegally paid tax.

Defendants' reliance upon the first two sentences in OCGA § 48-5-380 (c) (2014) as authority that the three-year deadline applies to taxpayers who elect to file suit directly in the trial court is misguided. This provision clearly states that a taxpayer cannot elect to proceed by filing a claim directly with the governing authority and then file suit in the trial court without waiting for the governing authority to rule upon their claim or 90 days from the date of filing the claim. See *Hartford Fire Ins. Co. v. iFreedom Direct Corp.*, 312 Ga. App. 262, 265 (1) (718 SE2d 103) (2012) ("[W]e must give each part of the statute meaning and avoid constructions that make some language mere surplusage. All parts of a statute shall be harmonized and given sensible and intelligent effect, because it is not presumed

10

that the legislature intended to enact meaningless language") (citation and punctuation omitted).

The Defendants' reliance on *Coleman*, 344 Ga. App. at 550-551 (2), is unpersuasive. In *Coleman*, the plaintiffs filed three separate class actions to recover for allegedly illegal property tax payments. The class action lawsuits were filed in 2011, 2012, and July 16, 2014. The first two class action lawsuits were filed pursuant to former OCGA § 48-5-380 (2011). The third class action was filed 13 days after the current version of OCGA § 48-5-380 (2014) became applicable. However, the plaintiffs in that lawsuit elected to file a claim directly against the governmental authority pursuant to OCGA § 48-5-380 (b). See id. at 547-548. *Coleman*, supra, did not address OCGA § 48-5-380 (g), and the statute of limitation discussion in *Coleman* specifically applies the former version of OCGA § 48-5-380 (2011). Id. at 550-551 (2) (a).

Because OCGA § 48-5-380 allows for the filing of a suit against a county or municipality for a tax refund within five years of the date the disputed taxes were paid, the Georgia Legislature has expressly waived the application of sovereign immunity for that duration of time. See *Sawnee Elec. Membership Corp. v. Ga. Dept. of Revenue*, 279 Ga. 22, 23 (2) (608 SE2d 611) (2005) ("The statutory authorization

11

to bring an action for a tax refund in superior court against a governmental body is an express waiver of sovereign immunity") (citations omitted). Here, Plaintiff filed suit within five years of payment and thus, the trial court's grant of Defendants' motion to dismiss must be reversed.

*Judgment reversed. Reese, P. J., and Markle, J., concur.*