304 Ga. 140
FINAL COPY

S18A0412. PATTEN v. ARDIS.

BLACKWELL, Justice.

In Brooks v. Parkerson, 265 Ga. 189 (454 SE2d 769) (1995), this Court held that the Grandparent Visitation Act of 1988[1] was unconstitutional to the extent that it authorized courts to award child visitation to a grandparent over the objection of fit parents and without a clear and convincing showing of harm to the child. Seventeen years later, the General Assembly enacted the Grandparent Visitation Rights Act of 2012,[2] a provision of which authorizes courts to award child visitation in some circumstances to a grandparent over the objection of a fit parent and without a clear and convincing showing of harm to the child:

> [I]f one of the parents of a minor child dies, is incapacitated, or is incarcerated, the court may award the parent of the deceased, incapacitated, or incarcerated parent of such minor child reasonable visitation to such child during his or her minority if the court in its

[1] See Ga. L. 1988, p. 864.

[2] See Ga. L. 2012, p. 860.

discretion finds that such visitation would be in the best interests of the child.

OCGA § 19-7-3 (d). This provision applies to fewer cases than the statute that we held unconstitutional in <u>Brooks</u> (which authorized awards of visitation to "any grandparent"), but it suffers from the same constitutional infirmity — it permits a court to set aside the decisions of a fit parent about what is best for his or her child, without clear and convincing proof that those decisions have harmed or threaten to harm the child, and based simply on the conclusion of a judge that he knows better than the parent what is best for the child. Adhering to our decision in <u>Brooks</u>, we hold today that OCGA § 19-7-3 (d) violates the right of parents to the care, custody, and control of their children, as that fundamental right is guaranteed by the Constitution of 1983.

1. In 2015, Robert Shaughnessy and Katie Patten married and conceived a child. Shaughnessy died soon thereafter. In November 2015, the widowed Patten gave birth to a baby girl, and Patten permitted Shaughnessy's mother, Mary Jo Ardis, to visit with the baby on a couple of occasions. But those visits

apparently did not go well,[3] and in November 2016, Ardis filed a petition in the Superior Court of Lowndes County pursuant to OCGA § 19-7-3 (d) for court-ordered visitation with her granddaughter.[4] Citing Brooks, Patten responded that subsection (d) unconstitutionally impairs a parent's "right to raise his or her child without undue state interference," and upon this ground, Patten moved to dismiss the petition for visitation. In May 2017, following a hearing, the trial court held that subsection (d) is constitutional,[5] denied the motion to dismiss, and granted the petition for visitation pursuant to subsection (d), concluding that

---

[3] The parties dispute why these visits went badly, and they also dispute whether Ardis was estranged from Shaughnessy at the time of his death.

[4] Ardis also sought visitation under OCGA § 19-7-3 (c) (1), which provides in pertinent part that a court can grant "any family member of the child reasonable visitation rights if the court finds by clear and convincing evidence that the health or welfare of the child would be harmed unless such visitation is granted and if the best interests of the child would be served by such visitation." The trial court based the judgment from which this appeal is taken, however, entirely upon OCGA § 19-7-3 (d), and no issue concerning OCGA § 19-7-3 (c) (1) is presented to this Court.

[5] In its order, the trial court did not mention Brooks, did not explain its thinking about the constitutional question, and said only in conclusory fashion that it "hereby affirms the constitutionality of OCGA § 19-7-3 (d)."

3

visitation with Ardis is consistent with the best interests of the girl.[6] Patten appeals, and we reverse and remand with direction.[7]

2. The right of parents to the care, custody, and control of their children is deeply embedded in our law. See In re L. H. R., 253 Ga. 439, 445 (321 SE2d 716) (1984). More than a hundred years ago, this Court identified it as among the inherent rights that are derived from the law of nature. See Sloan v. Jones, 130 Ga. 836, 847 (62 SE 21) (1908). See also Moore v. Dozier, 128 Ga. 90, 93-94 (57 SE 110) (1907). It found recognition in the common law of England, long before Georgia adopted the common law as our own.[8] See W. Blackstone, 1 Commentaries on the Laws of England 440-441 (1st ed. 1765). And this Court

---

[6] More specifically, the trial court ordered that, until the girl's sixth birthday, Ardis is entitled to visit with her between 11:00 a.m. and 3:00 p.m. on the third Saturday of March, the third Saturday of May, the third Saturday of August, the third Saturday of November, and December 28. After her sixth birthday, Ardis is entitled to have visitation with the girl over four weekends each year (from Friday evening until Sunday evening), one full week in July, and from the evening of December 28 to the evening of December 30.

[7] In the trial court and on appeal, Patten contends that OCGA § 19-7-3 (d) violates the United States Constitution *and* the Constitution of 1983. Our decision in Brooks rested on both. We limit our decision today, however, to the Constitution of 1983. Because OCGA § 19-7-3 (d) violates the state Constitution, there is no need for us to decide whether it also violates the national Constitution.

[8] "In 1784, our General Assembly adopted the statutes and common law of England as of May 14, 1776, except to the extent that they were displaced by our own constitutional or statutory law. That adoption of English statutory and common law remains in force today." Lathrop v. Deal, 301 Ga. 408, 412 (II) (A) n.9 (801 SE2d 867) (2017) (citations omitted).

recognized the right as early as 1858. See Rives v. Sneed, 25 Ga. 612, 622 (1858).

At common law, a parent "possessed the paramount right to the custody and control of his minor children." J. Schouler, A Treatise on the Law of Domestic Relations § 245 (4th ed. 1889). See also J. Kent, 2 Commentaries on American Law at 162-163 (1827). This "paramount right" was "controllable, in general, by the court only in the case of very gross misconduct, injurious to the child." Schouler, supra at § 247. See also Hodgson v. Minnesota, 497 U. S. 417, 483 (II) (110 SCt 2926, 111 LE2d 344) (1990) (Kennedy, J., concurring in part and dissenting in part). The rule at common law is consistent with the approach of the early Georgia cases, which acknowledged the "paramount right" of parents to the care, custody, and control of their children, but recognized that the right could be overcome by a showing of harm or threat of harm to the child. See, e.g., Sloan, 130 Ga. at 851 ("[T]he right of the father should not be disregarded and his child awarded to the custody of one neither the father nor mother (even though a grandparent) save for grave and substantial cause."); Moore, 128 Ga. at 93 ("If the parent so far fails in his or her duty that the child is in destitution and suffering, or is abandoned, or is being reared under

5

immoral, indecent, or obscene influences, likely to degrade it and bring it to a life of vice, the [s]tate may interpose its protecting arm and guard the little life against the impending disaster."). See also Hill v. Rivers, 200 Ga. 354, 358-365 (37 SE2d 386) (1946) (surveying early cases).

Our decision in Miller v. Wallace, 76 Ga. 479 (1886), is well illustrative of this approach. In Miller, maternal grandparents sought by petition for a writ of habeas corpus to wrest custody of a child from her father, following the death of her mother. We held that, although the law conferred a considerable discretion upon habeas courts "as to whom the custody of [a] child shall be given," 76 Ga. at 484 (2), this discretion did not stretch so far as to permit an award of custody to the grandparents as against the father in the absence of a voluntary relinquishment of his parental rights, parental abandonment or unfitness, or other exceptional cause, established by clear and strong evidence. See id. at 486-487. We explained:

> Prima facie, the right of custody of an infant is in the father, and when this right is resisted, upon the ground of his unfitness for the trust or other cause, a proper regard to the sanctity of the parental relation will require that the objection be sustained by clear and satisfactory proofs. A clear and strong case must be made to sustain an objection to the father's right. . . . The discretion to be exercised by the courts in such contests is not arbitrary. The rights of the

6

father, on the one hand, and the permanent interest and welfare of the infant, on the other, are both to be regarded, but the right of the father is paramount, and should not be disregarded, except for grave cause. The breaking of the tie that binds them to each other can never be justified without the most solid and substantial reasons, established by plain proof.

Id. (citation and punctuation omitted).

Today, "[t]here can scarcely be imagined a more fundamental and fiercely guarded right than the right of a natural parent to its offspring." Nix v. Dept. of Human Resources, 236 Ga. 794, 795 (225 SE2d 306) (1976). See also Wisconsin v. Yoder, 406 U. S. 205, 232 (92 SCt 1526, 32 LE2d 15) (1972) ("The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition."); In re Suggs, 249 Ga. 365, 367 (291 SE2d 233) (1982) ("The right to the custody and control of one's child is a fiercely guarded right in our society and in our law. It is a right that should be infringed upon only under the most compelling circumstances."). The United States Supreme Court has held that the right of fit parents to the care, custody, and control of their children is secured by the United States Constitution. See

7

Troxel v. Granville, 530 U. S. 57, 65 (II) (120 SCt 2054, 147 LE2d 49) (2000) ("[T]he interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized by this Court."). See also Quilloin v. Walcott, 434 U. S. 246, 255 (II) (A) (98 SCt 549, 54 LE2d 511) (1978) ("We have recognized on numerous occasions that the relationship between parent and child is constitutionally protected."). And this Court has recognized that the right is secured by our state Constitution as well.[9] See Brooks, 265 Ga. at 192 (2) (a). See also Clark v. Wade, 273 Ga. 587, 596 (IV) (544 SE2d 99) (2001) (Fletcher, P. J.) ("Parents have a constitutional right

_____

[9] In past cases, we have been less than precise about the particular provisions of our state Constitution that guarantee the right of parents to the care, custody, and control of their children. See, e.g., Brooks, 265 Ga. at 192 (2) (a) ("Parents have comparable interests under our state constitutional protections of liberty and privacy rights."). We have pointed, however, to the Due Process Clause, Ga. Const. of 1983, Art. I, Sec. I, Par. I, as one source of the guarantee. See Brooks, 265 Ga. at 192 (2) (a). Insofar as the right was already regarded as inherent and fundamental by the late part of the Nineteenth Century, the Inherent Rights Clause — which appeared in the Constitution of 1877 and has been carried forward into every Constitution since — may well constitute another source of the guarantee. See Ga. Const. of 1983, Art. I, Sec. I, Par. XXIX ("The enumeration of rights herein contained as a part of this Constitution shall not be construed to deny to the people any inherent rights which they may have hitherto enjoyed."). See also Doe v. Heck, 327 F3d 492, 518 (II) (B) n.22 (7th Cir. 2003) (noting that the federal courts have found protection for parental rights not only in the Due Process Clause of the United States Constitution, but also in the Ninth Amendment and the Equal Protection Clause). Because this case is controlled by our decision in Brooks, we need not decide today precisely which provisions of our state Constitution form the basis for the constitutional guarantee of the right in question. To decide this case, we need only follow Brooks.

under the United States and Georgia Constitutions to the care and custody of their children.").[10]

3. In Brooks, we considered the constitutionality of a statute that provided that the courts "may grant any grandparent of [a] child reasonable visitation rights upon proof of special circumstances which make such visitation rights necessary to the best interests of the child." 265 Ga. at 190 (1) (citing former OCGA § 19-7-3 (c)). After noting the fundamental nature of the right of parents to the care, custody, and control of their children and surveying the cases that had recognized that the right is constitutionally protected, see id. at 191-192 (2) (a), we observed that "implicit in Georgia cases, statutory and constitutional law is that state interference with parental rights to custody and control of children is permissible only where the health or welfare of a child is threatened." Id. at 193 (2) (b). We also pointed to cases in which we previously had held that the requisite threat to the health or welfare of a child had to be proved by clear and convincing evidence. See id. (citing Suggs and L. H. R., supra). We then concluded that the statute was unconstitutional because it authorized an award

_____

[10] Presiding Justice Fletcher authored an opinion in Clark that announced the decision of the Court, but that opinion was joined by only Justice Benham.

9

of visitation to a grandparent over the objection of fit parents based simply on the best interests of the child, without a clear and convincing showing of actual or imminent harm to the child:

> [E]ven assuming grandparent visitation promotes the health and welfare of the child, the state may only impose that visitation over the parents' objections on a showing that failing to do so would be harmful to the child. It is irrelevant, to this constitutional analysis, that it might, in many instances[,] be "better" or "desirable" for a child to maintain contact with a grandparent. The statute in question is unconstitutional under [the Constitution of 1983] because it does not . . . require a showing of harm before state interference is authorized.

Id. at 194 (2) (c) (footnote omitted).[11]

---

[11] Brooks also held that the statute violated the United States Constitution, see note 7, but in Clark, 273 Ga. at 595 (III), Presiding Justice Fletcher noted that the United States Supreme Court's decision in Troxel "raises the question whether we correctly interpreted federal constitutional law [in Brooks] as requiring a showing of harm to the child before a state may intervene in the parent's right to raise his or her family." See Troxel, 530 U. S. at 73 (II) ("We do not consider . . . whether the Due Process Clause [of the United States Constitution] requires all nonparental visitation statutes to include a showing of harm or potential harm to the child as a condition precedent to granting visitation."). Even so, Presiding Justice Fletcher (joined by Justice Benham) applied Brooks in Clark to read a harm requirement into the statute at issue, see Clark, 273 Ga. at 598 (IV), and four other Justices indicated that they continued to stand by Brooks. See id. at 600-601 (Sears, J., concurring); id. at 606-608 (Thompson, J., dissenting, joined by Carley and Hines, JJ.). Moreover, no development since Brooks has cast doubt upon its holding that our state Constitution requires such a showing of harm, and as we have discussed, *that* holding is consistent with the longstanding approach of Georgia law. And in this case, no party asks us to reconsider Brooks with regard to its interpretation and application of our state Constitution.

10

The statute at issue in this case, OCGA § 19-7-3 (d), is materially indistinguishable from the statute that we held unconstitutional in Brooks. Indeed, OCGA § 19-7-3 (d) suffers from precisely the same infirmity as the statute in Brooks — it authorizes an award of visitation to a grandparent over the objection of a fit parent and without any showing whatsoever (much less a showing by clear and convincing evidence) that the visitation is required to keep the child from actual or threatened harm. To be sure, OCGA § 19-7-3 (d) applies in a more limited set of circumstances than the statute we held unconstitutional in Brooks — OCGA § 19-7-3 (d) applies only when a parent of a child has died, become incapacitated, or been incarcerated, and it authorizes an award of visitation only to the parents of the deceased, incapacitated, or incarcerated parent of the child. The death, incapacity, or incarceration of a parent will frequently present a child with great difficulties, and we have no doubt that, in many cases, a close bond with grandparents may ease those difficulties. We likewise have no doubt that, in some cases, a child may suffer very real harm in those circumstances when the custodial parent refuses to permit visitation with a grandparent. Even so, we find no strong reason to conclude that grandparent visitation is always (or almost always) essential to keep a child from actual or

11

threatened harm upon the death, incapacity, or incarceration of a parent. Consequently, we cannot conclude that harm is so inherent in the limited circumstances in which OCGA § 19-7-3 (d) applies that proof by clear and convincing evidence of actual or threatened harm to the child is constitutionally unnecessary. Cf. Brooks, 265 Ga. at 194 (2) (c) ("While there are, to be sure, many instances where the grandparent-grandchild bond is beneficial to the child, we have found, and the parties cite, little evidence that this is most often the case."). Brooks leads inescapably to the conclusion that OCGA § 19-7-3 (d) violates the Constitution of 1983.

4. The trial court awarded visitation to Ardis under OCGA § 19-7-3 (d), and given the unconstitutionality of subsection (d), that award must be reversed. The case is remanded for the trial court to consider whether Ardis is entitled to visitation under OCGA § 19-7-3 (c).

Judgment reversed and case remanded with direction. All the Justices concur.

12

Decided June 29, 2018.

OCGA § 19-7-3 (d); constitutional question. Lowndes Superior Court. Before Judge Hardy.

Moore & Voyles, Gregory A. Voyles; M. Katherine Durant, for appellant.

Bennett Law Firm, James T. Bennett, Kari A. Bowden, for appellee.