315 Ga. 304
FINAL COPY

S22A1075.  BARNHILL et al. v. ALFORD.

LaGrua, Justice.

In this appeal, we have been asked to decide whether a grandmother's action for visitation rights to her biological granddaughter (the minor child of her deceased daughter) under OCGA § 19-7-3 — commonly known as the grandparent visitation statute — was precluded by the adoption of the child by her stepmother, and whether certain paragraphs of the grandparent visitation statute are unconstitutional, among other issues.  For the reasons that follow, we conclude that (1) the grandmother was authorized to pursue an action for visitation rights to her granddaughter despite the adoption, and (2) with respect to the constitutional challenges, this Court needs only to consider the constitutionality of one of the three paragraphs at issue — which we

hold to be constitutional. Accordingly, we affirm the trial court's rulings.

1. *Facts*

The minor child at issue (the "Child") was born out of wedlock to Lisa Hush ("Hush") in 2013. In 2014, Appellant Michael Barnhill ("Barnhill") filed a paternity action in the Superior Court of Cherokee County, seeking to establish his paternity as the biological father of the Child under OCGA § 19-7-43.[1] Legitimation, custody, visitation, and child support were then established by the court with respect to the Child, and Hush was designated as the primary physical custodian of the Child.[2]

From the time of the Child's birth in 2013, Hush and the Child lived with Appellee Cathy A. Alford ("Alford") — Hush's biological mother and the Child's biological grandmother — in Alford's home, and Alford assisted Hush in providing for the needs of the Child.

---

[1] Pursuant to OCGA § 19-7-43 (a) (5), "[a] petition to establish the paternity of a child may be brought by . . . [o]ne who is alleged to be the father."

[2] Hush and Barnhill were never married.

Hush passed away on March 10, 2018, and following her death, the Child went to live with Barnhill and his wife, Appellant Katheryn A. Barnhill ("Katheryn").

Two months later, on May 22, 2018, Alford filed the underlying petition for grandparent visitation, seeking visitation rights to the Child pursuant to OCGA § 19-7-3.[3] In Alford's petition, she alleged that, after Hush passed away and Barnhill took custody of the Child, Barnhill allowed Alford only "limited and sporadic visitation" with the Child — despite the fact that the Child lived with Alford in her home for the "entire course of [the Child's] life" — and required any visits between Alford and the Child to be supervised by Barnhill and/or Katheryn. Several months after Alford initiated the grandparent visitation action, Katheryn filed a petition for adoption

---

[3] Under OCGA § 19-7-3 (b) (1) (A), "[a]ny grandparent shall have the right to file an original action for visitation rights to a minor child." The statute defines "[g]randparent" as "the parent of a parent of a minor child" or "the parent of a minor child's parent who has died." OCGA § 19-7-3 (a) (2).

of the Child, which was finalized on February 11, 2019, without providing notice to Alford or the trial court.[4]

In October 2019, Barnhill moved to dismiss Alford's petition for grandparent visitation, arguing that Katheryn's adoption severed all legal ties between Alford and the Child under OCGA § 19-8-19[5] and that Alford had "no standing" to prosecute her action for grandparent visitation under OCGA § 19-7-3 (b) (2).[6] Barnhill also moved to dismiss Alford's petition on the theory that the petition was prematurely filed in violation of OCGA § 19-7-3 (c) (2)[7] because another custody action between Hush and Barnhill was pending.

_____

[4] On November 5, 2019, Katheryn moved to be added as a party-defendant to the grandparent visitation action due to her adoption of the Child. The motion was granted on November 19, 2019.

[5] Pursuant to OCGA § 19-8-19, "a decree of adoption shall terminate all legal relationships between the adopted individual and his or her relatives, including his or her parent, so that the adopted individual thereafter shall be a stranger to his or her former relatives for all purposes."

[6] OCGA § 19-7-3 (b) (2) provides that "[t]his subsection shall not authorize an original action when the parents of the minor child are not separated and the child is living with both parents."

[7] Under OCGA § 19-7-3 (c) (2), "[a]n original action requesting visitation rights shall not be filed by any grandparent more than once during any two-year period and shall not be filed during any year in which another custody action has been filed concerning the child."

4

Following a hearing on the motion to dismiss in December 2019, the trial court denied Barnhill's motion.

The trial court scheduled a final hearing on Alford's petition for grandparent visitation on March 16, 2021. One week before the scheduled hearing, the Barnhills filed a "Motion to Declare OCGA § 19-7-3 (c) (1), (c) (3), and (c) (5) Unconstitutional."

In their motion, the Barnhills asserted, among other claims, that OCGA § 19-7-3 (c) (1), (c) (3), and (c) (5) are unconstitutional because these paragraphs (1) fail to give paramount import to the child's best interests; (2) create presumptions in favor of family member visitation if the child has a preexisting relationship with the family member; (3) violate the constitutional protections parents are afforded to raise their children with no interference from the State; and (4) strip the trial court of its ability to determine whether a visitation schedule is in the best interests of the child.

At the final evidentiary hearing held March 16 to 18, 2021, the trial court allowed the parties to present oral argument on the

5

Barnhills' motion. On March 31, 2021, the trial court issued a final order granting Alford's petition for grandparent visitation. On the same date, the trial court issued an order denying the Barnhills' motion to declare OCGA § 19-7-3 (c) (1), (c) (3), and (c) (5) unconstitutional.

In denying the Barnhills' motion, the trial court summarily concluded that

> [b]ecause all presumptions are in favor of the constitutionality of a statute, the burden is on the party claiming that the law is unconstitutional to prove it. Under this framework, this Court finds that OCGA § 19-7-3 is not unconstitutional as applied to this case because: (A) [paragraph] (c) (1) does not create a presumption of harm against a parent's rights; (B) [paragraph] (c) (3) does not divest this Court of authority to make a determination in the best interests of the child; and (C) [paragraph] (c) (5) is not implicated in this Court's decision, but even if it were, it is severable from the statute.

(Citation and punctuation omitted.)

Specifically, with respect to OCGA § 19-7-3 (c) (1),[8] the trial court determined that this subsection

---

[8] OCGA § 19-7-3 (c) (1) provides:

6

does not create any presumption of harm or any presumption of custody determination in favor of any party [because] the statute provides the Court with the discretion to award custody to a child's family member where there is clear and convincing evidence that the health and welfare of the child would be harmed unless visitation is granted *and* the best interests of the child would be served by that visitation.

---

Upon the filing of an original action or upon intervention in an existing proceeding under subsection (b) of this Code section, the court may grant any family member of the child reasonable visitation rights if the court finds by clear and convincing evidence that the health or welfare of the child would be harmed unless such visitation is granted and if the best interests of the child would be served by such visitation. The mere absence of an opportunity for a child to develop a relationship with a family member shall not be considered as harming the health or welfare of the child when there is no substantial preexisting relationship between the child and such family member. In considering whether the health or welfare of the child would be harmed without such visitation, the court shall consider and may find that harm to the child is reasonably likely to result when, prior to the original action or intervention:

> (A) The minor child resided with the family member for six months or more;
> (B) The family member provided financial support for the basic needs of the child for at least one year;
> (C) There was an established pattern of regular visitation or child care by the family member with the child; or
> (D) Any other circumstance exists indicating that emotional or physical harm would be reasonably likely to result if such visitation is not granted.

The court shall make specific written findings of fact in support of its rulings.

7

(Emphasis in original.)  The trial court also noted that the factors set forth in OCGA § 19-7-3 (c) (1) (A) to (D) were to be considered by the court "in making that determination," but did not "impose *any* presumption of harm or presumption in favor of the family member seeking custody."  (Emphasis in original.)  The trial court concluded that, because Alford had to "prove by *clear and convincing evidence* that there would be harm to the child without visitation *and* that such visitation is in the child's best interests," OCGA § 19-7-3 (c) (1) "does not contain any implication of a presumption of harm." (Emphasis in original.)

As to OCGA § 19-7-3 (c) (3),[9] the trial court explained that this paragraph "does not unconstitutionally interfere with the parent-

---

[9] OCGA § 19-7-3 (c) (3) provides:
> While a parent's decision regarding family member visitation shall be given deference by the court, the parent's decision shall not be conclusive when failure to provide family member contact would result in emotional harm to the child. A court may presume that a child who is denied any contact with his or her family member or who is not provided some minimal opportunity for contact with his or her family member when there is a preexisting relationship between the child and such family member may suffer emotional injury that is harmful to such child's health. Such presumption shall be a rebuttable presumption.

child relationship" because the "rebuttable presumption" in this paragraph "is not automatic," and the provision "remains subservient to the clear and convincing evidence standard imposed by [paragraph] (c) (1)." In other words, OCGA § 19-7-3 (c) (3) does not displace the requirement in OCGA § 19-7-3 (c) (1) that "the court find[ ] by clear and convincing evidence that the health or welfare of the child would be harmed unless such visitation is granted and if the best interests of the child would be served by such visitation." OCGA § 19-7-3 (c) (1).

Additionally, in the trial court's final order awarding grandparent visitation rights to Alford, the trial court held that — "even without a rebuttable presumption" in paragraph (c) (3) — Alford "met her burden" pursuant to OCGA § 19-7-3 (c) (1) because "[t]here is clear and convincing evidence that the Child would suffer actual emotional harm unless visitation [with Alford] is granted," and "it is in the best interests of the Child that visitation be granted."

9

Finally, as to OCGA § 19-7-3 (c) (5),[10] the trial court noted that, because the court determined it was in the best interests of the Child to have more than 24 hours of visitation per month with Alford — i.e., more than the statutory minimum — the court did not need to rule on the constitutionality of the minimum imposed by (c) (5).

The Barnhills appealed the trial court's rulings to the Court of Appeals, and the Court of Appeals transferred the case to this Court on May 27, 2022, noting that this Court has exclusive jurisdiction over all cases involving construction of the Constitution of the State of Georgia and of the United States and all cases in which the constitutionality of a law, ordinance, or constitutional provision has been called into question. See *Atlanta Independent School System v. Lane*, 266 Ga. 657, 657 (1) (469 SE2d 22) (1996).

---

[10] OCGA § 19-7-3 (c) (5) provides:

Visitation time awarded to a family member shall not be less than 24 hours in any one-month period; provided, however, that when more than one individual seeks visitation under this Code section, the court shall determine the amount of time to award to each petitioner which shall not be less than 24 hours in any one-month period in the aggregate.

2. *Analysis*

(a) *Barnhill's Motion to Dismiss*

On appeal, the Barnhills contend that the trial court erred in denying Barnhill's motion to dismiss because Alford had no standing to bring and prosecute this grandparent visitation action under OCGA § 19-7-3 (b) (2) and because she filed the action prematurely in violation of OCGA § 19-7-3 (c) (2). We address each of these arguments in turn.

(i) *Standing*

As an initial matter, we conclude that, although the Barnhills argue that Alford had "no standing" to prosecute this action, Alford's standing is not really at issue in this case. Unquestionably, at the time Alford filed her petition for grandparent visitation rights in May 2018, she had standing to do so as the "parent of a minor child's parent who has died." OCGA § 19-7-3 (a) (2).

The Barnhills' real position — as suggested by their arguments and the law cited in support thereof — is that Katheryn's

subsequent adoption of the Child prohibited Alford from continuing to seek visitation rights to the Child and "mooted" Alford's petition. Regardless of how they frame it, however, the Barnhills' arguments fail.

The Barnhills argue that Alford's action is precluded by OCGA § 19-7-3 (b) (2) ("This subsection shall not authorize an original action when the parents of the minor child are not separated and the child is living with both parents."). Specifically, the Barnhills argue that, because they have not been separated (at least since February 2019 when Katheryn adopted the Child) and the Child has lived with them continuously, Alford's action is not permitted. See *Kunz v. Bailey*, 290 Ga. 361, 362 (720 SE2d 634) (2012) (holding that "by virtue of the limiting language in the last sentence of OCGA § 19-7-3 (b), grandparents may only file an original action for visitation when the parents are separated *and* the child is not living with both parents" (emphasis in original)).

12

The Barnhills also argue that, after Katheryn initiated the adoption proceedings, Alford's only avenue for obtaining visitation rights to the Child was by intervening in the adoption action pursuant to OCGA § 19-7-3 (b) (1) (B) ("[a]ny family member shall have the right to intervene in and seek to obtain visitation rights . . . whenever there has been an adoption in which the adopted child has been adopted by . . . a stepparent, notwithstanding the provisions of Code Section 19-8-19"), but Alford did not do so. And, thus, as soon as the adoption was finalized, Katheryn became the legal mother of the Child and Alford became a legal stranger to the Child as a matter of law. See OCGA § 19-8-19 (a) (1) ("[A] decree of adoption shall terminate all legal relationships between the adopted individual and his or her relatives . . . so that the adopted individual thereafter shall be a stranger to his or her former relatives for all purposes[.]").

With respect to the first argument, the Barnhills only address Alford's authorization — or lack thereof — to pursue this action for

visitation rights under the framework of OCGA § 19-7-3 (b). Notably, however, in Alford's response to Barnhill's motion to dismiss in the trial court, Alford questioned Barnhill's reliance on OCGA § 19-7-3 (b) and on *Kunz*, 290 Ga. at 362, and responded that she was authorized to seek visitation rights to the Child under OCGA § 19-7-3 (d), relying on *Fielder v. Johnson*, 333 Ga. App. 658, 659 (773 SE2d 831) (2015) (addressing *Kunz* in light of the addition of subsection (d) to the statute).[11] And, in denying Barnhill's motion to dismiss, the trial court adopted the reasoning set forth in Alford's response brief and explicitly held that Alford was authorized to

---

[11] In 2012, several months after this Court issued its decision in *Kunz*, the General Assembly amended OCGA § 19-7-3 by, among other things, adding subsection (d), which then provided:

> Notwithstanding the provisions of subsections (b) and (c) of this Code section, if one of the parents of a minor child dies, is incapacitated, or is incarcerated, the court may award the parent of the deceased, incapacitated, or incarcerated parent of such minor child reasonable visitation to such child during his or her minority if the court in its discretion finds that such visitation would be in the best interests of the child. The custodial parent's judgment as to the best interests of the child regarding visitation shall be given deference by the court but shall not be conclusive.

Ga. L. 2012, p. 862, § 1. After the issuance of the *Fielder* decision in 2015, OCGA § 19-7-3 was amended again by the General Assembly, effective July 1, 2022, to expand upon the language in subsection (d). See Ga. L. 2022, p. 749, § 1.

pursue this action under *Fielder*, 333 Ga. App. at 662-663 (concluding that biological grandparents were permitted by OCGA § 19-7-3 (d) to seek visitation rights to their grandchild — the child of their deceased daughter — after the stepmother's adoption of the child despite the language of OCGA § 19-7-3 (b) (2) and OCGA § 19-8-19).[12]  On appeal, the Barnhills have not argued that Alford is not permitted to pursue this action under OCGA § 19-7-3 (d), nor have they addressed, much less challenged, the trial court's decision based on *Fielder*.

With respect to the Barnhills' second argument — that Alford failed to intervene and seek visitation rights in the adoption action under OCGA § 19-7-3 (b) (1) (B) — this argument is disingenuous

---

[12] In the order, the trial court also observed that Katheryn filed and finalized her petition for adoption of the Child without giving notice to the court — in "a clear violation" of OCGA § 19-9-69 (d) (providing that parties have a "continuing duty to inform the Court of any proceedings in this or any state that could affect the current proceeding").  The trial court admonished the Barnhills for (1) engaging in "what can be termed a 'secret adoption'" in disregard of the fact that the Child "lost her mother at a very early age," and (2) denying the court "legally required notice of actions directly impacting the life of the [C]hild," for which "[n]o remedy is provided."  Many of us are likewise concerned by this clear violation.

given that the Barnhills failed to disclose Katheryn's adoption of the Child to Alford until after the adoption was finalized, depriving her of the opportunity to intervene in that action under OCGA § 19-7-3 (b) (1) (B).[13]  Ultimately, however, the Barnhills' failure to provide Alford with notice of the adoption proceeding — while inexcusable — was not legally dispositive because the trial court found that Alford was authorized to pursue this action under OCGA § 19-7-3 (d) and *Fielder*, and the Barnhills have not challenged that ruling on appeal.

(ii) *The Timing of Alford's Petition for Grandparent Visitation*

The Barnhills also assert on appeal that Alford prematurely filed her action for grandparent visitation in violation of OCGA § 19-7-3 (c) (2) and that the trial court should have dismissed Alford's petition on this additional basis.  We disagree.

---

[13] Additionally, when this Court inquired during oral argument about why the adoption was not disclosed to Alford, the Barnhills claimed attorney-client privilege.

16

OCGA § 19-7-3 (c) (2) provides, in pertinent part, that "[a]n original action requesting visitation rights shall not be filed by any grandparent . . . during any year in which another custody action has been filed concerning the child."

The record reflects that, in May 2016, Barnhill filed an action for change of custody of the Child in the Superior Court of Cherokee County, *Michael Barnhill v. Lisa Hush*, Civil Action File No. 16CV0943B (the "custody action"). On December 6, 2017, a "Consent Final Parenting Plan" concerning the Child was entered in the custody action, with Hush remaining as the primary physical custodian of the Child. On May 22, 2018 — following the death of Hush in March 2018 — Alford filed her petition for grandparent visitation. Barnhill argues that Alford should have waited until December 6, 2018 — one year from the date the Consent Final Parenting Plan was entered in the custody action — to file her action for grandparent visitation, and that by filing it in May 2018 — less than a year later — Alford violated OCGA § 19-7-3 (c) (2).

17

Under the plain language of OCGA § 19-7-3 (c) (2), the date upon which the clock starts to run for purposes of filing a grandparent visitation action is the date the custody action was filed — i.e., May 2016 — not the date the corresponding final order was entered — i.e., December 2017. Accordingly, Alford's petition was timely, and this contention is without merit.

(b) *The Barnhills' Constitutional Challenges to OCGA § 19-7-3 (c) (1), (c) (3), and (c) (5)*

The Barnhills also assert on appeal that the trial court erred in declining to declare OCGA § 19-7-3 (c) (1), (c) (3), and (c) (5) unconstitutional. In addressing the constitutionality of OCGA § 19-7-3 (c) (1), (c) (3), and (c) (5), we recognize that

> every reasonable construction must be resorted to[ ] in order to save a statute from unconstitutionality. This approach not only reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that the legislature, like this Court, is bound by and swears an oath to uphold the Constitution. The courts will therefore not lightly assume that the legislature intended to infringe constitutionally protected liberties or usurp power constitutionally forbidden it.

*In the Interest of M. F.*, 298 Ga. 138, 146 (2) (780 SE2d 291) (2015)

(citation and punctuation omitted). Therefore,

> all presumptions are in favor of the constitutionality of an Act of the legislature and [ ] before an Act of the legislature can be declared unconstitutional, the conflict between it and the fundamental law must be clear and palpable and this Court must be clearly satisfied of its unconstitutionality. Moreover, because statutes are presumed to be constitutional until the contrary appears, the burden is on the party alleging a statute to be unconstitutional to prove it.

*JIG Real Estate v. Countrywide Home Loans*, 289 Ga. 488, 490 (2) (712 SE2d 820) (2011) (citation and punctuation omitted). "[W]e afford the statutory text its plain and ordinary meaning, viewing the statutory text in the context in which it appears, and reading the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would." *Bell v. Hargrove*, 313 Ga. 30, 32 (2) (867 SE2d 101) (2021) (citation and punctuation omitted).

As discussed above, in the Barnhills' motion attacking the constitutionality of OCGA § 19-7-3 (c) (1), (c) (3), and (c) (5), the

Barnhills argue that these paragraphs are unconstitutional on their face because they: (1) ignore the best interests of the child; (2) violate the fundamental right of parents to make decisions concerning the care, custody, and control of their children; and (3) infringe upon the presumption that fit parents will act in the best interests of their children by creating presumptions in favor of a family member's visitation.

Specifically, with respect to OCGA § 19-7-3 (c) (1), the Barnhills argue that the reasonable harm factors in this paragraph create presumptions in favor of family member visitation if the child has a preexisting relationship with the family member, which violates the constitutional protections parents are afforded with the ability to raise their children with no interference from the State, citing *Davis v. Cicala*, 356 Ga. App. 873, 879-880 (849 SE2d 728) (2020) (Coomer, J., concurring), and *Troxel v. Granville*, 530 U.S. 57, 66-68 (II) (120 SCt 2054, 147 LE2d 49) (2000) (holding that "there is a presumption that fit parents act in the best interests of their children"). The

Barnhills assert that the concurring judge in that case correctly concluded in *Davis* that "OCGA § 19-7-3 unconstitutionally infringes on [the] parental right [to the custody and control of one's child] because it creates a rebuttable presumption in favor of family members' visitation rights that must be overcome by parents." *Davis*, 356 Ga. App. at 878 (Coomer, J., concurring). The Barnhills contend that, because OCGA § 19-7-3 (c) (1) creates a presumption in favor of family member visitation that directly contravenes the presumption that fit parents will act in the best interests of their children, this paragraph is unconstitutional. We disagree.

OCGA § 19-7-3 (c) (1) provides in pertinent part that

the court may grant any family member of the child reasonable visitation rights if the court finds by clear and convincing evidence that the health or welfare of the child would be harmed unless such visitation is granted and if the best interests of the child would be served by such visitation. The mere absence of an opportunity for a child to develop a relationship with a family member shall not be considered as harming the health or welfare of the child when there is no substantial preexisting relationship between the child and such family member. In considering whether the health or welfare of the child would be harmed without such visitation, the court shall

consider and may find that harm to the child is reasonably likely to result when, prior to the original action or intervention:

      (A) The minor child resided with the family member for six months or more;

      (B) The family member provided financial support for the basic needs of the child for at least one year;

      (C) There was an established pattern of regular visitation or child care by the family member with the child; or

      (D) Any other circumstance exists indicating that emotional or physical harm would be reasonably likely to result if such visitation is not granted.

The plain language of this paragraph does not create a presumption in favor of family member visitation, but places the burden of proof upon the family member seeking visitation rights and requires the trial court to use its discretion to award visitation to a child's family member only where there is "clear and convincing evidence" that the health and welfare of the child would be harmed without visitation and the best interests of the child would be served by that visitation. OCGA § 19-7-3 (c) (1). And, through subparagraphs (A) to (D), the statute provides factors that the trial

22

court "shall consider" in making that determination. See id. However, the statute does not provide that any one of these four factors is sufficient by itself — these are simply factors to be considered by the trial court in making a holistic assessment of whether family member visitation is in the best interest of the child.

Moreover, as addressed in more detail below, in awarding visitation rights to Alford under OCGA § 19-7-3 (c) (1), the trial court determined that Alford met her burden to prove — by clear and convincing evidence — that there would be harm to the Child without visitation with Alford and that such visitation was in the Child's best interest. Accordingly, we conclude that OCGA § 19-7-3 (c) (1) is not unconstitutional on its face, and as applied in this case, it also does not unconstitutionally interfere with the parent-child relationship.

As to OCGA § 19-7-3 (c) (3), the Barnhills argue that paragraph (c) (3) is unconstitutional because it creates a presumption that family member visitation is in the best interests of a child, shifting

23

the burden to parents to rebut that presumption and prove that their decision to withhold a grandparent's visitation is the correct decision for the child. As to OCGA § 19-7-3 (c) (5), the Barnhills argue that this paragraph unconstitutionally requires a minimum of 24 hours for grandparent visitation, without considering what would be in the best interest of the child. We conclude that these paragraphs have not been implicated in this case in light of the trial court's rulings on Alford's petition for grandparent visitation and the Barnhills' motion to declare the corresponding statute unconstitutional.

Paragraph (c) (3) provides that,

[w]hile a parent's decision regarding family member visitation shall be given deference by the court, the parent's decision shall not be conclusive when failure to provide family member contact would result in emotional harm to the child. A court may presume that a child who is denied any contact with his or her family member or who is not provided some minimal opportunity for contact with his or her family member when there is a preexisting relationship between the child and such family member may suffer emotional injury that is harmful to such child's health. Such presumption shall be a rebuttable presumption.

24

OCGA § 19-7-3 (c) (3).  Paragraph (c) (5) states that

> [v]isitation time awarded to a family member shall not be less than 24 hours in any one-month period; provided, however, that when more than one individual seeks visitation under this Code section, the court shall determine the amount of time to award to each petitioner which shall not be less than 24 hours in any one-month period in the aggregate.

OCGA § 19-7-3 (c) (5).

In awarding grandparent visitation rights to Alford, the trial court did not rely upon or even apply the presumption allowed by OCGA § 19-7-3 (c) (3) but, instead, concluded that Alford met her burden to show by "clear and convincing evidence" that the Child would be harmed without visitation and that visitation was in the Child's best interest under OCGA § 19-7-3 (c) (1).  Additionally, the trial court unequivocally withheld ruling on the constitutionality of OCGA § 19-7-3 (c) (5), observing that this paragraph was "not implicated in this Court's decision" because the trial court was granting Alford more than the 24-hour minimum mandated by (c) (5).

25

Therefore, because the trial court did not rely upon paragraph (c) (3) in awarding grandparent visitation rights to Alford or directly rule upon the constitutionality of (c) (5), we do not consider the Barnhills' constitutional challenges to OCGA § 19-7-3 (c) (3) and (c) (5).

(c) *The Trial Court's Award of Grandparent Visitation Rights to Alford under OCGA § 19-7-3 (c) (1)*

The Barnhills also contend on appeal that, notwithstanding the unconstitutionality of OCGA § 19-7-3 (c) (1), the trial court abused its discretion by concluding that Alford met her burden under OCGA § 19-7-3 (c) (1). In support of this contention, the Barnhills assert that, based upon the facts and evidence presented at trial, the trial court could not have reasonably found that Alford met her burden to show — by clear and convincing evidence — that the health and welfare of the Child would be harmed unless visitation with Alford was granted and that the best interests of the Child would be served by such visitation. See OCGA § 19-7-3 (c) (1).

We observe at the outset that, although the trial court concluded that Alford was authorized to pursue this action under OCGA § 19-7-3 (d), the trial court did not apply that subsection in determining that Alford was entitled to an award of grandparent visitation rights — applying paragraph (c) (1) instead. However, any error in the trial court's application of (c) (1) — as opposed to (d) — was harmless because a finding that Alford was entitled to an award of grandparent visitation rights under the stricter standard set forth in paragraph (c) (1) necessarily means she would have also been entitled to an award of grandparent visitation rights under subsection (d). That is because the standard of subsection (d) is encompassed by subsection (c) and incorporated into the same statute as one cause of action. And, while the version of subsection (d) in effect at the time the trial court awarded visitation to Alford, see Ga. L. 2012, p. 862, § 1, was declared unconstitutional by this Court in *Patten v. Ardis*, 304 Ga. 140, 145 (3) (816 SE2d 633) (2018), paragraph (c) (1) — as we have already concluded — *is*

constitutional, and that is the standard the trial court applied here. Thus, there was no harm in the trial court's application of OCGA § 19-7-3 (c) (1) in this case.

"The decision to grant or deny a grandparent's petition for visitation is within the discretion of the trial court, and we will affirm the court's decision absent an abuse of that discretion." *In the Interest of L. R. M.*, 333 Ga. App. 1, 4 (2) (775 SE2d 254) (2015). "Where there is any evidence to support the trial court's ruling, a reviewing court cannot say there was an abuse of discretion." *Vines v. Vines*, 292 Ga. 550, 552 (2) (739 SE2d 374) (2013). See also *McFarlane v. McFarlane*, 298 Ga. 361, 361 (1) (782 SE2d 29) (2016) (holding that "[a] trial court's decision regarding a modification of custody will be upheld on appeal in the absence of a clear abuse of discretion, and where there is any evidence to support the trial court's decision, this Court cannot say there was an abuse of discretion" (citation omitted)).

During the three-day final evidentiary hearing on Alford's petition for grandparent visitation, substantial evidence was presented to support Alford's claim for grandparent visitation, including testimony from the parties, the parties' experts, the Child's therapist, and the Family Coordinator. After the hearing, the trial court concluded that all of the factors required by OCGA § 19-7-3 (c) (1) have been met in this case and that the evidence and testimony presented established the following: (1) the Child resided with Alford for more than four years; (2) Alford provided parental care, nurturing, and supervision of the Child; (3) Alford provided financial support for the basic needs of the Child for more than one year; and (4) the Child would suffer emotional injury that was harmful to her health if visitation with Alford was not granted, given the preexisting relationship established between Alford and the Child. See OCGA § 19-7-3 (c) (1) (A)-(D). The trial court thus held that Alford "met her burden" pursuant to OCGA § 19-7-3 (c) (1) and that "[i]t is in the best interests of the Child that [Alford] have

29

visitation with the Child to ensure the Child's emotional and psychological development and well-being."

Based on the evidence presented, as well as the trial court's consideration of the Child's best interest and its finding that Alford met her burden of proof in this case, we cannot say "there was a clear abuse of discretion" in the trial court's grant of the petition for grandparent visitation rights. *Vines*, 292 Ga. at 552 (2). Accordingly, under the any evidence standard, we find that the trial court did not abuse its discretion in awarding visitation time between Alford and the Child, and we affirm the trial court's ruling in this case.[14] See *In the Interest of L. R. M.*, 333 Ga. App. at 4-5 (2).

*Judgment affirmed. All the Justices concur, except Bethel, J., who concurs specially.*

---

[14] In the trial court's order awarding grandparent visitation rights to Alford, an apparent scrivener's error appears in the section pertaining to Alford's summer visitation time with the Child — namely, the corresponding paragraph includes interchangeable references to a "seven (7) day summer vacation period" and a "ten (10) day period." Nothing about this Court's decision should prevent the trial court — once the remittitur has issued from this Court — from revisiting its final order awarding grandparent visitation rights in order to address this apparent scrivener's error.

BETHEL, Justice, concurring specially.

While I am dubious that the ultimate holding of *Fielder* is correct when it is considered alongside OCGA § 19-8-19 (a) (1), the Barnhills did not challenge the portion of the trial court's decision finding standing as recognized in that case. Accordingly, I join the opinion of the Court to the extent that it rests on the proposition that the trial court found standing on a ground not challenged by the Barnhills. I write separately to address what appears to have been an intentional effort to abuse the judicial system and a potential need for attention from the General Assembly.

Here, as explained more fully in the opinion of the Court, the Child spent around the first four years of her life living with her mother and grandmother, Cathy Alford. Following the trauma of the death of her mother, the Child began living with her father and stepmother. Alford petitioned for visitation in hopes of continuing her relationship with her grandchild in light of the fact that her interaction with the Child had become "limited and sporadic."

31

Alford's standing to maintain her petition was potentially jeopardized when, during the pendency of the petition, the Child's stepmother *initiated and completed an adoption of the Child without providing notice to Alford or the court* where Alford's petition for visitation was pending. See OCGA § 19-7-3 (b) (2). The adoption decree resulted in the termination of the legal relationship between Alford and the Child. See OCGA § 19-8-19.

Despite the legal, personal, and practical consequences flowing from the adoption proceeding, the Barnhills failed to inform Alford and the trial court of the filing, pendency, and finalization of the adoption. Counsel for the Barnhills did not explain, in briefings or at oral argument, why this failure occurred. Nevertheless, the Barnhills argued that the adoption caused Alford to lose standing in this case. As noted above, this argument failed, in my view, because the Barnhills failed to challenge the trial court's finding of standing under *Fielder*. I am not certain of what the outcome of that analysis would be had the issue been preserved.

It is difficult for me to fathom how anyone *focused on the interest of the Child* would conduct themselves in this way. The record contains no indication that Alford is anything other than a loving and caring grandmother with whom the Child has developed a healthy attachment. At the level of basic human relationships, a biological father and soon-to-be adoptive mother who are placing a child first simply must include a loving grandparent in the adoption story of the child.

Moreover, to the extent that this maneuver was an intentional effort to deceive the court hearing the petition for visitation, it is a repugnant attempt to abuse the legal system. Meanwhile, to the extent that counsel for the Barnhills was aware of a deceptive strategy to mislead the court and gain advantage in litigation, trial counsel may have violated the Georgia Rules of Professional Conduct. See Rule 8.4 (a) (4) of the Georgia Rules of Professional Conduct ("It shall be a violation of the Georgia Rules of Professional Conduct for a lawyer to: . . . engage in professional conduct involving

dishonesty, fraud, deceit or misrepresentation. . . ."). Finally, to the extent that a visitation petition may be considered a "child custody proceeding," as used in OCGA § 19-9-69, then the Barnhills may have also violated state law. See OCGA § 19-9-69 (d) ("Each party [in a child custody proceeding] has a continuing duty to inform the court of any proceeding . . . that could affect the current proceeding."). But this case does not require us to reach those questions, and we avoid deciding issues which are not necessary to the case at hand. See *Crenshaw v. Crenshaw*, 267 Ga. 20, 20 (471 SE2d 845) (1996) ("[When] we are able to decide [a] case on a narrower basis, we do not reach the broader issues."). Regardless, the Barnhills' omissions are unacceptable and flagrantly undermine both the Child's interests and the integrity of the legal process. I close with an invitation to the General Assembly to consider the current state of our Code in light of the facts of this case.

Decided December 20, 2022.

OCGA § 19-7-3; constitutional question. Cherokee Superior Court. Before Judge Sumner.

*Marple Rubin Family Law, David N. Marple, Sana R. Rupani*, for appellants.

*Buckhead Family Law, Melissa D. Strickland, Malone W. Allen; Schwarz Family Law, Barry P. Schwarz*, for appellee.

*David S. DeLugas*, amicus curiae.