**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 26, 2023**

# In the Court of Appeals of Georgia

A23A0999, A23A1000. SHELLEY NAMDAR-YEGANEH v. CYNDI
NAMDAR-YEGANEH et al.; and vice versa.

PIPKIN, Judge.

In Georgia, under certain circumstances, grandparents have a statutory right to file an original action seeking visitation rights to their grandchildren or to intervene in existing actions involving custody and/or visitation rights. See OCGA § 19-7-3 (b) (1). The issue in this case is whether grandparents who have previously been granted visitation rights also have the right to file an action seeking to modify the existing visitation order. The trial court concluded that they did, denied the Mother's[1] motion to dismiss the modification petition, and entered a separate order modifying the

---

[1] The parties to these appeals are the Mother of the children, Shelley Namdar-Yeganeh, and the paternal grandparents, Cyndi Namdar-Yeganeh and Ghodrat Namdar-Yeganeh. To avoid confusion with frequent, non-party references to "grandparents," we will refer to Cyndi and Ghodrat as "the Appellees."

visitation order ("Final Order") .The Mother and the Appellees then filed this appeal and cross-appeal, which were docketed as Case Nos. A23A0999 and A23A1000, respectively. As more fully explained below, we reverse the denial of the Mother's motion to dismiss the modification petition and vacate the part of the Final Order modifying the existing visitation order.

The following facts underlie this appeal. The minor children in this case are a girl born in 2008 (the "Granddaughter") and a boy born in 2010 (the "Grandson"). The children's Father died in 2016; at the time of his death, the parents, children, and the Appellees all lived in New Mexico. In September 2016 – about five months after the Father's death – the Appellees filed a petition in a New Mexico court seeking visitation with the children, and in May 2017, the New Mexico Court entered a "Stipulated Order" awarding the Appellees certain visitation with the children. Following a hearing in March 2018, the New Mexico court modified the Stipulated Order but also noted that it no longer had exclusive, continuing jurisdiction under the Uniform Child Jurisdiction and Enforcement Act as there was no longer any parent living in New Mexico.[2]

---

[2] The record reflects that the Mother and the children moved to Georgia prior to the entry of the Stipulated Order.

In February 2019, the Appellees filed a petition in the Superior Court of Cobb County, Georgia to (1) register the 2018 New Mexico judgment, (2) modify the 2018 New Mexico judgment,[3] and (3) find the Mother in contempt of the New Mexico judgment. The Mother responded and filed a motion to dismiss the modification part of the petition, arguing that nothing in OCGA § 19-7-3 (commonly referred to as the "Grandparent Visitation Statute"[4]) authorizes a grandparent who has been granted visitation rights to file an action to modify or amend those rights. Following a hearing on the motion to dismiss, the trial court denied the motion, reasoning that the Appellees' petition to modify was authorized by another code section – OCGA § 19-9-3 (b) – and Georgia case law. Following a five-day hearing in August 2022 on the modification petition, the trial court generally expanded the visitation rights of the Appellees with respect to the Grandson but refused to require the Granddaughter to participate in visits and refused to mandate family therapy or additional reunification

_____

[3] The Appellees asked that the 2018 order be modified to allow unsupervised and expanded visitation, court-ordered family therapy, and the appointment of a guardian ad litem. The Appellees later amended the modification petition, requesting that the Mother be required to transport the children to and from visitation and that all paternal family members be allowed to participate in visitation and Skype calls with the children.

[4] See *Sheppard v. McCraney*, 317 Ga. App. 91, 92 (730 SE2d 721) (2012).

efforts.[5] The Mother appeals from the order denying the motion to dismiss the modification petition and the portion of the Final Order expanding the visitation with the Grandson. In their cross-appeal, Appellees challenge certain factual findings made by the trial court concerning reunification, and they also argue that the trial court abused its discretion by refusing to mandate visitation with the Granddaughter.

*Case No. A23A0999.*

1. Before turning to the precise issue presented here, it is worth noting that anytime we are called upon to consider visitation issues between children of a fit parent and grandparents or other family members, we are necessarily dealing with issues of constitutional importance. See *Patten v. Ardis*, 304 Ga. 140, 141 (2) (816 SE2d 633) (2018). That is because "[p]arents have a constitutional right under the United States and Georgia Constitutions to the care and custody of their children." *Clark v. Wade*, 273 Ga. 587, 596 (IV) (544 SE2d 99) (2001). As the Georgia Supreme Court has observed "[t]he right to the custody and control of one's child is a fiercely guarded right in our society and in our law. It is a right that should be infringed upon only under the most compelling circumstances." *In re Suggs*, 249 Ga. 365, 367 (291

---

[5] The trial court also declined to hold the mother in contempt and that portion of the Final Order has not been challenged on appeal.

4

SE2d 233) (1982). Simply put, "there is a presumption that fit parents act in the best interests of their children." *Troxel v. Gransville*, 530 U. S. 57, 68 (II) (120 SCt 2054, 147 LE2d 49) (2000). Thus, "so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself in the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." Id. at 68-69. Accordingly, the Georgia Supreme Court has held that to pass constitutional muster, statutes that allow a court to grant a grandparent visitation rights over the objection of a fit parent must require a showing by clear and convincing evidence that the health or welfare of the child would be harmed unless such visitation is granted and that the best interests of the child would be served by such visitation. See *Patten*, 304 Ga. at 144 (3); *Brooks v. Parkerson*, 265 Ga. 189, 192 (2) (a) (454 SE2d 769) (1995); OCGA § 19-7-3 (c), (d).

The present case concerns a rather narrow issue – whether a grandparent who has been granted visitation rights is authorized by the Grandparent Visitation Statute, or any other provision of Georgia law, to file a petition seeking to modify an existing

grandparent visitation order. To answer this question, we first turn to the relevant provisions of the Grandparent Visitation Statute. OCGA § 19-7-3 (b)[6] states:

(1) Except as otherwise provided in paragraph (2) of this subsection:

(A) Any grandparent shall have the right to file an original action for visitation rights to a minor child; and

(B) Any family member [which is defined to include a grandparent, see OCGA § 19-7-3 (a) (1)] shall have the right to intervene in and seek to obtain visitation rights in any action in which any court in this state shall have before it any question concerning the custody of a minor child, a divorce of the parents or a parent of such minor child, a termination of the parental rights of either parent of such minor child, or visitation rights concerning such minor child or whenever there has been an adoption in which the adopted child has been adopted by the child's blood relative or by a stepparent, notwithstanding the provision of Code Section § 19-8-19.

_____

[6] We note that OCGA § 19-7-3 (d) also authorizes a court to award visitation to the grandparents of a minor child whose parent has died, is incapacitated, or incarcerated. However, the Supreme Court of Georgia declared a previous version of the subsection unconstitutional in 2018, see *Patten*, 304 Ga. at 145(3), and the current version of the statute did not take effect until July 1, 2022, after the trial court ruled on the motion to dismiss the modification petition and shortly before the trial court entered the Final Order in this case. Thus, it was not argued or considered below and is not at issue here.

(2) This subsection shall not authorize an original action when the parents of the minor children are not separated and the child is living with both parents.

Once grandparents are granted visitation rights, those rights can be modified under OCGA § 19-7-3 (c) (2), which states, in relevant part, that

> *the legal custodian, guardian of the person, or parent of the child may petition the court for revocation or amendment of such rights,* for good cause shown, which the court, in its discretion, may grant or deny; but such petition shall not be filed more than once in any two-year period.

(Emphasis supplied.)

To determine the proper meaning of these provisions of the Grandparent Visitation Act, we start by examining the plain language of the statute, presuming

> that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would . . . [and] if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citations and punctuation omitted.) *Deal v. Coleman*, 294 Ga. 170, 172-173 (1) (a) (751 SE2d 337) (2013).

Under the plain language of OCGA § 19-7-3 (b), grandparents can either file an "original action"[7] – provided the parents are separated and the grandchild is only living with one parent – or they can intervene in certain specified existing proceedings. See *Barnhill v. Alford*, 315 Ga. 304, 308-310 (2) (882 SE2d 245) (2022); *Pate v. Sadlock*, 345 Ga. App. 591, 594 (1) (b) (i) (814 SE2d 760) (2018). On the other hand, subsection (c) (2) specifically lists the groups of persons who may petition to modify grandparent visitation once it is granted – the legal custodian, the guardian, or parent of the child. And under the plain language of the statute, Appellees do not fall into any of these three categories. Further, to the extent any ambiguity exists in the statutory scheme, we "apply the concepts of expressio unius est exclusio alterius (expression of one thing implies exclusion of another) and expressum facit cessare tacitum (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded)."

---

[7] In the order denying the motion to dismiss the modification petition, the trial court specifically found, after noting the acknowledgment of the parties' counsel, that this case did not involve an original action.

(Citation and punctuation omitted.) *Goddard v. City of Albany*, 285 Ga. 882, 884 (684 SE2d 635) (2009). Since grandparents are named as persons who may initiate an action to visit with their grandchildren, but not listed among the persons who may seek to modify an existing grandparent visitation order, under these long-standing tenets of statutory construction, we conclude that the Grandparent Visitation Statute does not authorize a grandparent to *initiate* an action to modify an existing grandparent visitation order.

Implicitly acknowledging that nothing in OCGA § 19-7-3 specifically authorizes grandparents to file an action for modification of an existing order, the trial court nevertheless reasoned that "it would be illogical and impractical to find that OCGA § 19-7-3 is the only means to modify grandparent visitation" and then determined that "OCGA § 19-9-3 supplements and compliments OCGA § 19-7-3, as evidenced by OCGA § 19-9-3 (d), *Pate v. Sadlock*, 345 Ga. App. 591[, (1) (b) (ii) (814 SE2d 760)] (2018), *Van Leuvan v. Carlisle*, 322 Ga. App. 576) [( 745 SE2d 814] (2013), and *George v. Sizemore*, 238 Ga. 525, 527 [233 SE2d 579)] (1977)." Pointing to our language in *Steedley v. Gilbreth*, 359 Ga. App. 551, 553 (859 SE2d 520) (2021), where we said that "the mechanism for obtaining [grandparent] visitation is set out in OCGA § 19-7-3, not OCGA § 19-9-3[,]" the Mother argues that OCGA §

19-7-3 provides the *exclusive* mechanism and authority for establishing and/or modifying grandparent visitation, and the trial court erred by looking to other statutes to authorize the filing of Appellees' modification petition. Although the Mother reads our language in *Steedley* too broadly,[8] we agree that the trial court erred by "supplementing" the provisions of OCGA § 19-7-3 with the provisions of OCGA § 19-9-3. On its face, OCGA § 19-7-3 applies to grandparent visitation and, on its face, OCGA § 19-9-3 applies to custody between parents. The only reference in OCGA § 19-9-3 to grandparents is in subsection (d), which simply expresses a policy, made in the context of a custody dispute between parents, to encourage continuing contact with a child and grandparents who have shown the ability to act in the best interests of the child. In fact, our Supreme Court has described the interplay between the two statutes: "[OCGA § 19-9-3] encourages contact with grandparents in OCGA § 19-9-3

---

[8] First, the issue in *Steedly* did not directly concern grandparent visitation or OCGA § 19-7-3. Further, in referencing the "mechanism" for obtaining grandparent visitation, we did not use the word exclusive, and no where did we mention modification of an existing grandparent visitation order. Accordingly, *Steedley* does not answer the question before us. See *City of Alpharetta v. Vlass*, 360 Ga. App. 432, 436-437 (1) (861 SE2d 249) (2021) ("It is a basic tenet of appellate law that questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (citation and punctuation omitted).

10

(d), and OCGA § 19-7-3 provides a mechanism for a grant of visitation rights to grandparents when necessary to ensure and preserve this contact." *Stone v. Stone*, 297 Ga. 451, 455 (774 SE2d 681) (2015).

Although grandparents are only mentioned in OCGA § 19-9-3 (d), the trial court nevertheless determined that OCGA § 19-9-3 (b) authorized Appellees to initiate an action modifying their visitation rights in this case. This interpretation, however, is contrary to the plain language of the statute. Indeed, OCGA § 19-9-3 (b) specifically applies in "any case in which a judgment *awarding the custody of a child* has been entered[.]" (Emphasis supplied.) And no such judgment has been entered in this case. For this same reason, the trial court incorrectly reasoned that the Georgia Supreme Court's decision in *George v. Sizemore* controlled its analysis. The question in *George* concerned modification of a *custody* order in a habeas corpus case, not modification of a grandparent visitation order.

Likewise, our decisions in *Pate v. Sadlock* and *Van Leuan v. Carlisle* do not answer the narrow question before us. In *Pate*, we analyzed whether a grandparent was permitted to file a *counterclaim* in response to a parent's properly filed modification action under OCGA § 19-7-3 (c) (2); we did not hold that a grandparent has the statutory right *to initiate* an action to modify an existing visitation order, and

11

we specifically declined to address the applicability of OCGA § 19-9-3. 345 Ga. App. at 594 (1) (b) (i). And in *Van Leuan*, there was no question concerning whether the grandparent had followed the proper procedure in seeking grandparent visitation;[9] instead, that case analyzed the authority of the trial court to issue a *temporary* grandparent visitation order. 322 Ga. App. at 583 (3).[10]

In sum, grandparent visitation in this state is governed by statute, and nothing in OCGA § 19-7-3 or OCGA § 19-9-3 authorizes grandparents who have been granted visitation rights to then initiate modification of an existing order in the absence of some other properly pending action.

> The courts cannot construe [a statute] to force an outcome that the legislature did not expressly authorize. The doctrine of separation of powers is an immutable constitutional principle which must be strictly enforced. Under that doctrine, statutory construction belongs to the courts, legislation to the legislature. We can not add a line to the law.

---

[9] Although the opinion does not specifically say it, it is apparent that the grandparent filed an original action under OCGA § 19-7-3 (b).

[10] We also note that *Van Leauan* is physical precedent only, and accordingly, anything said in that case that might support the trial court's reading of OCGA § 19-9-3 is not binding on this Court. See Court of Appeals Rule 33.2 (a) (2).

(Citation and punctuation omitted.) *Turner v. Georgia River Network*, 297 Ga. 306, 308-309 (773 SE2d 706) (2015).

Accordingly, the trial court's order denying the Mother's motion to dismiss the modification petition is reversed, and upon remand, the trial court is directed to dismiss the Appellees' petition to modify the previous visitation order.

2. Because the trial court should have dismissed Appellees' petition for modification, the portion of the Final Order deciding the modification issues must be vacated. Accordingly, we need not reach the Mother's arguments challenging, in part, the substance of the Final Order.

*Case No. A23A1000.*

3. The Appellees filed a cross appeal, seeking to challenge portions of the Final Order that were adverse to them. However, as stated in Divisions 1 and 2, the trial court should have dismissed, not decided, the Appellees' petition for modification and, accordingly, that portion of the Final Order must also be vacated upon remand.

*Judgment reversed and vacated in part in Case No. A23A0999; judgment vacated in part in Case No. A23A1000. Dillard, P. J., and Rickman, J., concur.*

13