**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and PIPKIN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules

June 11, 2026

# In the Court of Appeals of Georgia

A26A0157. GARNER v. HARVIN.

PIPKIN, Judge.

In this child custody action filed pursuant to OCGA § 19-7-1(b.1), Samuel Garner ("Father") challenges the trial court's Final Order entered after a bench trial granting him sole legal and physical custody of his 10-year-old daughter Nia but awarding his deceased wife's mother, Faye Harvin ("Grandmother"), visitation time pursuant to subsection (d) of the close-family-member visitation statute, OCGA § 19-7-3. Father also challenges, among other things, the apportionment to him of responsibility for any of the guardian ad litem fees and the denial of his request for attorney fees and expenses.

The outcome of this appeal is largely controlled by this Court's recent decision in *Pinkerton v. Nichols*, 375 Ga. App. 245 (915 SE2d 696) (2025). Father's opening

brief contains a list of 11 enumerations of error, but the argument section of his brief has just seven point headings, only one of which matches any of his 11 enumerations of error. Father's counsel filed a similarly mismatched brief on behalf of the appealing parent in *Pinkerton*. In any event, of Father's 11 enumerations of error, none warrants reversal.[1]

---

[1] Father's opening brief fails to comport with this Court's rules in all the ways that the appealing parent's opening brief in *Pinkerton* did. See 375 Ga. App. at 245-46(1) ("While the brief includes nine enumerations of error, it does not identify how each enumeration was preserved for review, it does not state the applicable standard of review for each enumeration, and the arguments do not follow the order of and address each enumerated error. See Court of Appeals Rule 25(a). [The appealing parent] has also improperly attempted to exceed this court's limitation on the length of appellate briefs, see Court of Appeals Rule 24(f)(1), by purporting to incorporate her request for oral argument into her brief pursuant to Court of Appeals Rule 23(a). But that rule only authorizes the adoption of language from another properly filed appellate brief, not from other documents as a means of exceeding the mandated limits on brief length. See Court of Appeals Rule 23(a) ... ."). This is the second time that this Court has identified problems with counsel's briefing, and we trust that these shortcomings will not be repeated in the future. See, e.g., *Thornton v. State*, 307 Ga. 121, 127(3)(c) n.6 (834 SE2d 814) (2019). See also Court of Appeals Rule 7(c) ("Breach of any rule of the Court of Appeals may result in a Court order requiring compliance. Failure to comply with a Court order may subject the offending party and/or attorney to a finding of contempt and may cause the appeal to be dismissed or the party's brief to be stricken."), (d) ("Repeated violations of this Court's rules or orders may result in the revocation of the violator's admission to practice before the Court of Appeals.").

1. "On appeal from an order granting grandparent visitation, we view the evidence in the light most favorable to the trial court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the mandated visitation was authorized." Id. at 246(2) (citation modified). "The decision to grant or deny a grandparent's petition for visitation is within the discretion of the trial court, and we will affirm the court's decision absent an abuse of that discretion." *Barnhill v. Alford*, 315 Ga. 304, 315 (882 SE2d 245) (2022) (citation modified).

(a) Viewed in the light most favorable to the trial court's judgment, the record shows as follows. Father married Atoya Garner ("Mother") in November 2011, and they had one child together – Nia – who was born on November 22, 2014. At some point, Mother was diagnosed with Stage IV Metastatic Breast Cancer, and on August 19, 2022, she relocated with Nia to Charlotte, North Carolina, where they moved in with Mother's parents. On the same day, Father filed a complaint for divorce against Mother in the trial court. On November 10, 2022, Father, Mother, and their respective attorneys signed, and the trial court entered, a Temporary Consent Order in the divorce action granting Mother primary physical custody of the child and awarding Mother and Father joint legal custody with Mother being the final decision-maker on all major issues regarding Nia. The court awarded Father visitation

approximately every other weekend through March 2023, alternating between North Carolina and Georgia, and ordered Father to pay Mother $627 per month as child support.

On Sunday night, April 16, 2023, Mother died. The next day, April 17, 2023, Father contacted the police, drove to Charlotte, and showed up unannounced at Grandmother's house accompanied by four police cars, which alarmed Nia. Father demanded that Nia be given to him. He also demanded Nia's clothes and waited while Grandmother gathered them. Father then drove back to Georgia with Nia and, without notifying Grandmother, emailed Nia's school in Charlotte and asked that she be unenrolled. Later that day, in light of Father's erratic behavior, Grandmother filed a verified Petition for Grandparent Custody and Request for Emergency Relief in the trial court seeking to be awarded primary physical custody and legal custody of Nia pursuant to OCGA § 19-7-1(b.1).

On April 18, 2023, Father was personally served with a summons and a copy of the petition, and the trial court scheduled a hearing for April 20, 2023. At the hearing, the trial court entered a consent Temporary Custody Order awarding Grandmother primary physical custody of Nia and final decision-making authority regarding major decisions for her, continuing Father's twice-monthly weekend visitation, and

requiring Father to return Nia to Grandmother in Charlotte no later than noon on April 22, 2023. The order stated that attorney Joy Edwards would be appointed as Nia's guardian ad litem ("GAL") in the matter. At the time of Mother's death, Father owed her $2,612 in unpaid child support, and the order required him to tender that amount to the GAL towards her initial retainer of $4,000 with the remainder to be paid by Grandmother. The order also specified that Father and Grandmother would thereafter equally divide the costs of the GAL. On May 4, 2023, the court entered a separate order appointing Edwards as the GAL, which outlined her authority and directed Father and Grandmother to pay their respective parts of the initial retainer within ten days.

On July 20, 2023, the trial court held a status conference at which the parties and their attorneys appeared and presented evidence, and the court entered a new Temporary Custody Order later that day. The court found that Father had not made any payment to the GAL, who therefore had been unable to begin her investigation. As a result, the court essentially continued in effect the terms of the April consent Temporary Custody Order, with Grandmother retaining primary physical custody and major decision-making authority and Father having visitation with Nia two weekends per month. The order noted that Nia would start the next school year in Charlotte on

August 28, 2023. Father eventually paid the GAL, and on October 5, 2023, the GAL began her investigation.

On May 7, 2024, Father, represented by new counsel, filed an answer and counterclaim to Grandmother's petition in which he requested sole legal and physical custody of Nia and sought an award of attorney fees and expenses. On November 4, 2024, the GAL filed a Motion for Guardian ad Litem Fees explaining that she had exhausted the initial retainer of $4,000 and requesting that Father and Grandmother be required to pay an additional retainer amount of $1,000 each.

On November 8, 2024, Father, now represented by his current counsel, filed four motions: (1) a Motion to Vacate the Temporary Custody Order entered on July 20, 2023; (2) a Motion in Limine and Motion to Declare OCGA § 19-7-1(b.1) Unconstitutional, Facially and as Applied; (3) a Motion for Findings of Fact and Conclusions of Law pursuant to OCGA § 9-11-52(a); and (4) a Motion to Amend the Order Appointing Guardian ad Litem, nunc pro tunc to May 4, 2023, to require Grandmother to pay all the GAL fees. On November 25, 2024, the trial court denied Father's Motion to Amend the Order Appointing Guardian ad Litem, and on December 16, 2024, the court granted the GAL's Motion for Guardian ad Litem Fees. On January 28, 2025, the court entered an Order Setting Hearing scheduling the

bench trial on Grandmother's petition, which the court later specially set for April 11, 2025. On April 2, 2025, Grandmother filed a verified Amended Complaint to include an alternative count for visitation pursuant to OCGA § 19-7-3(d) in the event the court denied her request for custody.

(b) At the bench trial on April 11, 2025, the GAL testified regarding her investigation and recommendations. She stated that the evidence that she received was overwhelming that Nia was loved, happy, and well-adjusted at both Grandmother's home and Father's home; that Grandmother and Father did not get along; that Grandmother was willing to make more concessions than Father, who "sits squarely in his space of, I am Nia's biological father ... and, as such, ... everything should defer to him"; and that Nia's teachers had concerns about Father putting "a lot of pressure on Nia to be perfect," while Grandmother was "more encouraging and accepting." The GAL stated that while Father's "brand of parenting might not be the type of parenting that I would encourage, that's not my role, and he [is] still her father," and she recommended that Nia be placed in Father's custody after the current school year ended in June.

Regarding visitation, the GAL testified that she felt "very strongly that without a [c]ourt [o]rder saying that [the maternal grandparents] have to have certain

visitation, ... [Father] will not permit that visitation" given how he had acted throughout the case and how possessive he was "of Nia and his role." The GAL further testified that "Nia will be devastated" if she is cut off from her maternal grandparents. The GAL stated that it is "important that Nia be able to visit with her grandparents at least once a month, and spend time with them over some holidays" and that it is "important that she spends time over the summer with them, as well." According to the GAL, prior to Mother's death, Grandmother had an established pattern of regular visitation with Nia and had provided financial support for the family. The GAL also testified that she had no concerns about Grandmother's ability to physically care for Nia and no concerns about Grandmother "restricting or not allowing Nia to communicate with her father."

Grandmother testified that Nia had been living with her for about two-and-a-half years; that she and Nia have always had a great relationship; that she visited Nia on a regular basis when Mother was alive; and that she provided financial support with things like rent, clothes, and dance lessons before Mother and Nia moved to Charlotte in August 2022. Grandmother also testified that she got Nia grief counseling after Mother died; that Father was uncooperative with Grandmother's efforts to have Nia attend a grief camp; and that Father had not provided her with any financial support

for Nia since Mother died. Grandmother further testified that she was willing to accept the GAL's recommendation and concede custody if the trial court would allow her visitation with Nia.

Father testified that Nia loves and is close to her Grandmother; that when Nia is in North Carolina with Grandmother, Nia communicates with Father "[a]ll the time"; that he had paid close to $9,000 in attorney fees in the custody action; and that he had paid "[r]ight around $7,000" to the GAL. On cross-examination, despite Father's acknowledgment that Nia was happy and had good grades, he refused to say that Grandmother was a "good" grandmother or had "done a good job with Nia," allowing only that "she's a fair grandmother" and "did a reasonable job." He admitted that, in the two years since Mother's death while Nia had been living with Grandmother, he had provided no financial support to Grandmother for Nia, and he only reluctantly acknowledged that Grandmother had a financial role in supporting Nia. Father admitted that he did not tell Grandmother that the reason he would not agree for Nia to attend a certain grief camp in North Carolina was because he had already put Nia in a grief camp in Georgia. As for visitation, Father testified that he was "for visitation, but I'm requesting it not be mandated." Father's testimony was so evasive that the trial court eventually threatened to hold him in contempt.

(c) On June 5, 2025, the trial court entered a Final Order finding that Nia had resided in Grandmother's home since August 2022, a period of nearly three years; that Nia loved and had formed a strong emotional bond with Grandmother; that Grandmother had been Nia's primary caretaker since Mother died in April 2023; and that in the April 20, 2023 Temporary Custody Order, Father consented to Grandmother being awarded temporary primary physical custody and to the appointment of the GAL. The court further found, "by clear and convincing evidence, that the child will suffer harm if visitation with [Grandmother] is not awarded, based on the factors in OCGA § 19-7-3(d)(1)." The court explained that: (1) Nia resided with Grandmother for approximately eight months prior to Mother's death; (2) Grandmother provided financial support for Nia's basic needs for at least one year prior to Mother's death, including contributing to living expenses, activity expenses, and clothing expenses; (3) prior to Mother's death, there was an established pattern of regular visitation and child care by Grandmother for Nia; and (4) there was an established and substantial preexisting relationship between Nia and Grandmother. The court also found that Nia's best interests would be served by having regular visitation with Grandmother.

The court granted Father sole legal and physical custody of Nia commencing after the conclusion of the school year on June 10, 2025; denied Grandmother's request for custody of Nia pursuant to OCGA § 19-7-1(b.1); and therefore found that Father's Motion in Limine and Motion to Declare OCGA § 19-7-1(b.1) Unconstitutional, Facially and as Applied, was moot. The court awarded Grandmother visitation of one weekend per month for the first three months following Nia's transition to Father's custody and one weekend every other month thereafter; two non-consecutive weeks of visitation during the summer; and either visitation during Christmas break or visitation from 6:00 p.m. on the first Friday in January until 6:00 p.m. the following Sunday. As for holidays, the court ordered: "Grandmother shall be entitled to Thanksgiving visitation each year, from 6:00p.m. the Tuesday before [T]hanksgiving until 6:00p.m. the Saturday after Thanksgiving. ... Father shall have all other holiday visitation." The court also awarded Grandmother at least weekly contact with Nia via telephone, Facetime, or Zoom and ruled that Grandmother was entitled to attend all of Nia's school events and extracurricular activities. The court denied Father's request for attorney fees, noting that it was unclear under what statute he was seeking them and that there had been no notice for

11

consideration of an award under OCGA § 9-15-14. The court also summarily denied Father's renewed request for reapportionment of the GAL fees.

On July 3, 2025, Father filed a timely notice of appeal. Grandmother did not file a cross-appeal. The case was orally argued on December 4, 2025. On the same day, we granted Grandmother leave to file a supplemental brief and granted Father leave to file a response supplemental brief.[2]

2. Father contends that the trial court erred by not granting his Motion in Limine and Motion to Declare OCGA § 19-7-1(b.1) Unconstitutional, Facially and as Applied. He argues that OCGA § 19-7-1(b.1), which authorizes an award of custody to a nonparent relative such as a grandparent under certain circumstances, is unconstitutional. However, the trial court concluded that this argument was moot in light of its decision to grant Father sole legal and physical custody of Nia and to deny Grandmother's request for custody pursuant to OCGA § 19-7-1(b.1), and the court therefore did not rule on the merits of Father's constitutional challenge to OCGA § 19-7-1(b.1). The trial court's ruling was sound, and the issue is moot. See *Crary v. Clautice*, 318 Ga. 573, 576(2) (899 SE2d 98) (2024) (holding that a parent's

---

[2] The oral argument is archived on this Court's website, gaappeals.gov. See Court of Appeals of the State of Georgia, Oral Arguments, Oral Argument Video Archive, December 4, 2025, Case No. A26A0157.

constitutional challenge to OCGA § 19-7-3 was moot where "[t]he trial court already ruled in [her] favor" by setting aside the order granting her parents visitation with her child). Moreover, we "may not pass upon the constitutionality of a statute when the challenge was not distinctly ruled on by the trial court." *Pinkerton*, 375 Ga. App. at 249(3) (citation modified).

3. Father also contends that the trial court erred by not granting his Motion to Vacate the Temporary Custody Order entered on July 20, 2023. But the entry of the Final Order on June 5, 2025, rendered any challenge to the July 20, 2023 Temporary Custody Order moot. See *Richello v. Wilkinson*, 361 Ga. App. 703, 708-09(1) & n.14 (865 SE2d 571) (2021) ("The final order renders any issues regarding the validity of the temporary order moot." (citation modified)). See also *Edwards v. Edwards*, 226 Ga. 875, 878(2) (178 SE2d 168) (1970) (holding that the entry of a final order rendered any issue involving temporary custody moot).

4. Father claims that the trial court erred in failing to bifurcate the issue of harm to Nia from the issue of Nia's best interests, and perhaps further erred in failing to trifurcate the issue of what minimal contact between Grandmother and Nia would be necessary to alleviate the harm. However, Father did not file a motion for bifurcation or trifurcation in the trial court, and he has not otherwise shown, "with appropriate

13

citations to the record," that the question of bifurcation or trifurcation was raised in and ruled on by the trial court. Court of Appeals Rule 25(a)(5). In addition, he has failed to support this claim with any argument or citation of authority. See Court of Appeals Rule 25(a)(7). Accordingly, he has abandoned it. See *Pinkerton*, 375 Ga. App. at 250(5) (holding that a claim that the trial court erred in "failing to bifurcate the issue of harm from the issue of the best interests of the children" was not raised in the trial court and not supported by any argument). See also Court of Appeals Rule 25(d)(1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

5. Father asserts that "[t]he trial court erred by considering irrelevant and incompetent evidence." However, he has not identified the specific testimony or other evidence to which he is referring, much less shown, "with appropriate citations to the record," how this claim "was preserved for review." Court of Appeals Rule 25(a)(5). In addition, he has failed to support this claim with any argument or citation of authority. See Court of Appeals Rule 25(a)(7). Accordingly, he has abandoned this claim. See Court of Appeals Rule 25(d)(1). See also Court of Appeals Rule 25(d)(1)(i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court will not search

for and may not consider that enumeration."); *Pinkerton*, 375 Ga. App. at 250(6) (holding that the appealing parent had not carried her burden to demonstrate plain error in the trial court's admission of allegedly irrelevant evidence).

6. Father also asserts that "[t]he trial court erred by considering [Grandmother's] feelings and desires, which are irrelevant to any issue, and inflammatory and unduly prejudicial." Again, he has not identified the specific testimony or other evidence to which he is referring, much less shown with appropriate citations to the record how this claim was preserved for review. See Court of Appeals Rule 25(a)(5). And again, he has failed to support this claim with any argument or citation of authority. See Court of Appeals Rule 25(a)(7). Accordingly, he has abandoned this claim. See Court of Appeals Rule 25(d)(1). See also Court of Appeals Rule 25(d)(1)(i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court will not search for and may not consider that enumeration."); *Pinkerton*, 375 Ga. App. at 250(6).

7. Father argues that the trial court erred by entering its Final Order awarding Grandmother visitation with Nia without clear and convincing evidence that Nia would suffer "significant long-term emotional harm" in the absence of such visitation.

Contrary to Father's argument, a showing by clear and convincing evidence of either physical harm to the child — or significant, long-term emotional harm — is required only when the government seeks to award *custody* of a child to a nonparent relative over a fit parent's objection. See *Strickland v. Strickland*, 298 Ga. 630, 631(1) (783 SE2d 606) (2016) ("To overcome this presumption [i.e., OCGA § 19-7-1(b.1)'s rebuttable presumption that it is in the best interests of a child for custody to be awarded to the parent or parents of such child], a third-party relative must show, with clear and convincing evidence, that the child will suffer either physical harm or significant, long-term emotional harm if *custody* is awarded to the parent." (emphasis added)). To award *visitation* to a biological grandparent whose child has died over the surviving parent's objection, a court need only "find[] by clear and convincing evidence that the health or welfare of the child would be harmed unless such visitation is granted and [that] the best interests of the child would be served by such visitation." OCGA § 19-7-3(d)(1). See also *Dias v. Boone*, 320 Ga. 785, 796-97(3) (912 SE2d 547) (2025) (discussing the showing of harm that is constitutionally required in Georgia to award visitation to a close family member over a fit parent's objection); *Barnhill*, 315 Ga. at 312-13(2)(b) (rejecting constitutional challenge to OCGA § 19-7-3(c)(1) and its

harm-to-the-health-or-welfare-of-the-child standard for awarding visitation to a close family member over a fit parent's objection).

When viewed in the light most favorable to the trial court's judgment, the evidence presented at the bench trial and summarized above in Division 1 was sufficient to enable the court to find by clear and convincing evidence that Nia's health or welfare would be harmed if Grandmother was not awarded certain limited visitation with Nia and that such visitation was in Nia's best interests. See *Pinkerton*, 375 Ga. App. at 247-49(2). Accordingly, this claim lacks merit.

8. Father also argues that the trial court erred by failing to compare the harm to Nia absent visitation with Grandmother with the alleged harm to Nia caused by awarding such visitation. Father has not shown, "with appropriate citations to the record," how this issue "was preserved for review." Court of Appeals Rule 25(a)(5). Moreover, he has not cited any legal authority to support this claim or shown that such a comparison is required by OCGA § 19-7-3(d). See *Pinkerton*, 375 Ga. App. at 251(7) (holding that the appealing parent, who cited no legal authority in support of her claim, had not shown that the trial court erred "in failing to compare the harm that would be caused by a denial of grandparent visitation with the harm that would be caused by an award of visitation"). See also Court of Appeals Rule 25(a)(7). Instead,

he "makes conclusory assertions without attempting to apply them to the specific facts of this case." *Pinkerton*, 375 Ga. App. at 251(7) (citation modified). But "such rhetoric is not a substitute for cogent legal analysis, which is, at a minimum, a discussion of the appropriate law as applied to the relevant facts." Id. (citation modified). Accordingly, this claim lacks merit.

9. Father claims that the trial court erred by failing to make specific written findings of fact supporting each increment of visitation awarded to Grandmother. However, he has not shown, "with appropriate citations to the record," that this claim was raised in and ruled on by the trial court. Court of Appeals Rule 25(a)(5). In addition, he "has made no showing that OCGA § 19-7-3 mandates such an explanation." *Pinkerton*, 375 Ga. App. at 251(8). Cf. *Venticinque v. Lair*, 323 Ga. 169, 175(1) (924 SE2d 312) (2025) (Peterson, C.J., concurring) (suggesting, in a concurrence for two Justices only, that an incremental approach to awarding visitation to an individual adjudicated to be an equitable caregiver pursuant to OCGA § 19-7-3.1 "*may be* consistent with our case law" (emphasis added)). Accordingly, this claim lacks merit. See *Pinkerton*, 375 Ga. App. at 251(8).

10. Father contends that "[t]he trial court erred by requiring [him] to pay any amount for the Guardian ad Litem" because "O.C.G.A. § 19-7-1(b.1) makes no

provision for the payment of the fees of the GAL" and because "[i]t is inconsistent and unthinkable that a parent should be required to pay any portion of the fees of the GAL in a dispute with a nonparent." However, Father cites no authority for the proposition that it is impermissible to order a parent to pay a portion of the GAL fees in a dispute with a nonparent. And while Father is correct that OCGA § 19-7-1(b.1) "makes no provision for the payment of the fees of the GAL," as we have previously observed, "[n]othing in that statute requires guardian ad litem fees to be borne solely by the petitioner." *Reder v. Dodds*, 354 Ga. App. 598, 603(4) (839 SE2d 708) (2020) (physical precedent only). Moreover, the Uniform Superior Court Rules expressly authorize courts to appoint guardians ad litem to "represent the best interests of the child" in cases involving "child custody, visitation, and [other] child-related issues," USCR 24.9(3), and to exercise discretion in determining both the amount of fees to be awarded and "how payment of the fees shall be apportioned between the parties," USCR 24.9(8)(g). Furthermore, Father signed a consent order on April 20, 2023, in which he agreed to pay $2,612 towards the GAL's initial $4,000 retainer and thereafter to split the GAL fees equally with Grandmother. Accordingly, this claim lacks merit.

11. Father also contends that the trial court erred by denying his Motion to Amend the Order Appointing Guardian ad Litem, nunc pro tunc to May 4, 2023, to require Grandmother to pay all the GAL fees. This claim fails for the reasons stated above in Division 10.

12. Father further contends that the trial court erred in denying both his request for attorney fees and expenses and his request for reapportionment of the GAL fees. His claim regarding reapportionment of the GAL fees fails for the reasons stated above in Division 10. As for his attorney fees claim, Father did not file a motion for attorney fees in the trial court. As the court noted in its Final Order, it was "unclear under what statute" Father was seeking attorney fees, and "there was no notice for any consideration of an award of attorney's fees pursuant to O.C.G.A. § 9-15-14." In any event, Father has failed to support his attorney fees claim with any argument or citation of authority, and he has therefore abandoned this claim. See Court of Appeals Rule 25(a)(7); *Pinkerton*, 375 Ga. App. at 251(9). See also Court of Appeals Rule 25(d)(1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

13. Finally, we address an issue that Father did not raise in his 11 enumerations of error. Near the end of oral argument, after noting that Nia's birthday is November

22 and that the trial court awarded Grandmother visitation for part of every Thanksgiving break, we asked the parties whether Nia will ever get to spend her birthday with Father and, if not, whether the award of Thanksgiving visitation to Grandmother was an abuse of discretion. After some discussion, we granted the parties permission to file supplemental briefs addressing this issue.

In her supplemental brief, Grandmother asserts — and the calendar confirms, — that the award of Thanksgiving break visitation to Grandmother will not prevent Nia from ever spending her birthday with Father. See OCGA § 24-2-201 (governing judicial notice of adjudicative facts); *Smith v. McTaggart*, 343 Ga. App. 144, 145 (806 SE2d 229) (2017) (taking judicial notice that a particular date was not a federal holiday and was not designated and proclaimed by the Governor as a public and legal holiday). Nia was born in 2014. She is currently 11 years old, and she will turn 18 on November 22, 2032 — three days before Thanksgiving that year. The trial court awarded Grandmother visitation each year from 6:00 p.m. the Tuesday before Thanksgiving to 6:00 p.m. the Saturday after Thanksgiving. Pursuant to this visitation schedule, Nia spent her birthday with Father last year (2025), and she will spend her birthday with him again this year (2026) and next year (2027). For the two years after that (2028 and 2029), Grandmother will have visitation with Nia on her birthday. And for the two

years after that (2030 and 2031), Nia will again spend her birthday with Father. Thus, it is not the case that the trial court's visitation schedule will prevent Father from spending time with Nia on her birthday every year. So the answer to our question at oral argument about whether Nia will ever get to spend time with Father on her birthday is yes.

Moreover, Father's trial testimony suggested that awarding Grandmother visitation over Thanksgiving break would not interfere with the way that Father had traditionally celebrated Nia's birthday with her. Father testified that in the past, Nia's birthday had fallen during the Thanksgiving season, and that "we have a certain tradition because of that." He explained: "From the time that she was born, Nia and my family [have] always celebrate[d] her birthday a little bit earlier, because the kids are always out [of school], and celebrating [Thanksgiving] with their families around the time that she has her birthday." In other words, every year since Nia was born, Father's side of the family had gotten together before Thanksgiving break to celebrate her birthday.

Even aside from the issue of Nia's birthday, it gives us some pause that the trial court awarded Grandmother visitation with Nia every Thanksgiving Day. As both sides acknowledge, Thanksgiving is a family-centered holiday often associated with

extended family gatherings and traditions. But on the facts of this case, we cannot say that the trial court's award was an abuse of discretion.

First, the GAL testified that it was "important that Nia be able to ... spend time with [her grandparents] over some holidays," and the trial court awarded Grandmother visitation on only one holiday a year; Nia spends every other holiday with Father. Second, Father testified that he had spent every Christmas with Nia and that it was important to him to be able to do that for religious reasons; he offered no similar testimony — or, indeed, any testimony — about Thanksgiving. Third, as noted above, Father testified that his family gets together every year before Thanksgiving break to celebrate Nia's birthday; the visitation schedule does nothing to change that. Under these circumstances, the trial court did not abuse its discretion by awarding Grandmother visitation with Nia for part of every Thanksgiving break. Accordingly, we affirm the trial court's judgment.

*Judgment affirmed. Dillard, P. J., and Gobeil, J., concur in judgment only.*

A26A0157.  GARNER v. HARVIN


DILLARD, Presiding Judge, concurring in judgment only.

I concur in the judgment of the Court because I agree with the majority that the trial court's order should be affirmed and Garner either failed to preserve or abandoned most of his enumerations of error. I write separately because I do not agree with all that is said in the majority opinion and to lay down a jurisprudential marker of sorts. To put it plainly, I have serious concerns about constitutionality of Georgia's

grandparent-visitation statute (OCGA § 19-7-3),[1] so my concurrence in judgment only should be understood as just that—a concurrence in judgment only and nothing more.

---

[1] See generally *In the Interest of M. F.*, 298 Ga. 138, 144–45(2) (780 SE2d 291) (2015) (noting that "[t]he presumption that children ordinarily belong in the care and custody of their parents is not merely a presumption of the statutory and common law, but it has roots in the fundamental constitutional rights of parents. The Constitution secures the fundamental right of parents to direct the upbringing of their children, and it protects a private realm of family life which the state cannot enter without compelling justification." (punctuation and citation omitted)); *Brooks v. Parkerson*, 265 Ga. 189, 191(2)(a) (454 SE2d 769) (1995) (noting that the Supreme Court of the United States has "long recognized a constitutionally protected interest of parents to raise their children without undue state interference"). See also *Troxel v. Granville*, 530 U.S. 57, 80 (120 SCt 2054, 147 LEd2d 49) (2000) (Thomas, J., concurring) ("I would apply strict scrutiny to infringements of fundamental rights. Here, the State of Washington lacks even a legitimate governmental interest—to say nothing of a compelling one—in second-guessing a fit parent's decision regarding visitation with third parties."); *Venticinque v. Lair*, 323 Ga. 169, 174(1) (924 SE2d 312) (2025) (Peterson, C.J., concurring) (noting that the right of fit parents to the "care, custody, and control of their children" is a fundamental constitutional right that pre-exists government and "found recognition in the common law of England long before Georgia adopted the common law as our own" (punctuation omitted)); *In the Interest of D. C. S.*, 371 Ga. App. 186, 206 (899 SE2d 834) (2024) (Dillard, P. J., concurring) (noting that "in every parental-rights case, we must be ever mindful of the long-standing, fundamental principle that parents have a constitutional right under the United States and Georgia Constitutions to the care and custody of their children. As our Supreme Court has rightly emphasized, there can scarcely be imagined a more fundamental right than the right of a natural parent to his or her offspring. And the fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents." (cleaned up)).